LUCIUS B. OTIS, Receiver,

v.

SUSAN B. SPENCER.

*Filed at Ottawa May 12, 1882.*

1. DELIVERY OF DEED—*necessary, to pass title.* To render a deed of conveyance operative to pass the title there must be an unconditional delivery, or a delivery in *escrow.*

2. SAME—*what will constitute a delivery.* To constitute the act of a grantor a delivery of a deed, it must be such as to manifest an intention on his part to make a delivery, and to part with the possession and control of the instrument. This intention may be gathered from acts or words, or from both, and it is not essential that the deed be delivered to the grantee, but it may be to an agent or another person for the grantee.

3. Where a man, a few days before his marriage, handed a deed of property to his intended wife, saying there was the deed for the house which he had conveyed to her in accordance with his promise and the conditions they had talked of before, and the wife testified that before the marriage the grantor handed her the deed, and after some conversation respecting it she returned it to him for the purpose of having it recorded, and to take care of for her: *Held,* that in the absence of any evidence contradicting this testimony, or impeaching it, or any circumstance throwing suspicion on their evidence, this very clearly showed a valid delivery of the deed.

4. WITNESS—*competency—husband and wife.* On a creditor's bill to set aside a deed made by a debtor in contemplation of marriage to one whom he afterwards married, the grantor in the deed is a competent witness in behalf of his wife to testify to transactions and conversations relating to the property, which occurred before the marriage.

5. SAME—*of matters affecting credibility of witness.* The fact that husband and wife, in their depositions in a suit to set aside a conveyance of the former to the latter in contemplation of marriage, on the ground of fraud as to creditors, failed to testify as to the delivery of the deed, while in their subsequent deposition they do so testify after an amendment of the bill charging that the conveyance was never delivered, will not afford any just ground for discrediting their testimony.

6. FRAUDULENT CONVEYANCE—*post-nuptial conveyance to wife by debtor.* A voluntary post-nuptial conveyance or settlement upon a wife will be set aside in favor of preëxisting creditors of the grantor, if he does not retain ample means to discharge his indebtedness.

7. SAME—*marriage—as a sufficient consideration.* Marriage is a sufficient consideration to support a conveyance of land or marriage settlement,

and the grantee is entitled to the same protection, when taking without an intent to aid the grantor in defrauding his creditors, as a purchaser who has paid the full value of the land.

8. SAME—*insolvency of grantor not of itself sufficient to avoid his conveyance.* The insolvency of the grantor at the time of making a conveyance of land to a purchaser, or intended wife in consideration of her marrying the grantor, does not of itself render the conveyance fraudulent as to creditors, when the grantee had no notice or knowledge of such fact, and is not chargeable with fraudulent intent.

9. SAME—*as to facts to put grantee upon inquiry.* The statement of counsel to the parties to a deed executed in consideration of a marriage agreement, that the conveyance would be good unless the grantor was indebted beyond his means, but it was doubtful whether it could be sustained against creditors, without stating any fact relating to the grantor's condition or solvency, or that he was indebted at all, or that the attorney even believed or suspected he was, is not sufficient to put the grantee upon inquiry as to the grantor's solvency, and hence is no notice of that fact.

APPEAL from the Circuit Court of Cook county; the Hon. WILLIAM H. BARNUM, Judge, presiding.

Mr. J. L. HIGH, for the appellant:

Spencer was not a competent witness, under the ruling in *Mueller* v. *Rebhan*, 94 Ill. 142, as the very question in dispute is, whether the property is the separate estate of the wife. The statute has not changed the common law rule, except where the litigation concerns her separate property. The exclusion at common law does not rest upon the ground of interest of the parties, but is based upon grounds of public policy. 1 Phillips on Evidence, 77, and notes; 2 Starkie on Evidence, 550; *Reeves* v. *Herr*, 59 Ill. 81; *Neubrecht* v. *Santmeyer*, 50 id. 74.

To constitute a delivery of a deed there must be an existing intention upon the part of the grantor that the act shall have such effect, and such intention must be evidenced by an actual delivery to the grantee, or some person in his behalf, and the grantor must part with all control over the instrument. These three elements must combine to make a valid delivery, and the absence of either element is fatal.

*Cook* v. *Brown*, 34 N. H. 460; *Maynard* v. *Maynard*, 10 Mass. 456; *Wilson* v. *Cassidy*, 2 Ind. 562; *Dearmond* v. *Dearmond*, 10 id. 191; *Berg* v. *Anderson*, 22 id. 36; *Prutzman* v. *Baker*, 30 Wis. 644; *Wiggins* v. *Lusk*, 12 Ill. 132; *Gunnell* v. *Cockerill*, 84 id. 319.

If it should be contended that the delivery to Loomis, or to the vendor, operated to pass title, reference is made to the following authorities as conclusive against the position: *Herbert* v. *Herbert*, Breese, 354; *Bryan* v. *Wash*, 2 Gilm. 557; *Hulick* v. *Scovill*, 4 id. 159; *Kingsbury* v. *Burnside*, 58 Ill. 310.

Counsel also argued at considerable length that Spencer being insolvent at the time of the conveyance, and the facts and circumstances were such as to give the grantee notice of his insolvency, or at least put her on inquiry, it was fraudulent as to the grantor's creditors, citing secs. 4 and 5 of the Statute of Frauds, and *Columbine* v. *Penhall*, 1 Sm. & Grif. 228; *Compton* v. *Cotton*, 17 Ves. 264; *Bulmer* v. *Hunter*, L. R. 8 Eq. 46; Bump on Fraudulent Conveyances, 310; *Emerson* v. *Bemis*, 69 Ill. 537; *Norton* v. *Norton*, 5 Cush. 524; *Eddy* v. *Baldwin*, 23 Mo. 538; *Hackett* v. *Bailey*, 86 Ill. 74.

Mr. Henry B. Mason, and Mr. Owen F. Aldis, for the appellee:

Delivery was for the first time put in issue at the rehearing in the circuit court. *Spencer* v. *Otis*, 96 Ill. 570.

Record and acknowledgment are *prima facie* evidence of delivery. *Himes* v. *Keighblingher*, 14 Ill. 469; *McConnell* v. *Johnson*, 2 Scam. 522.

In addition to this we have the positive testimony of both grantor and grantee that there was delivery in apt time, and there is absolutely no evidence to the contrary.

David D. Spencer is a competent witness for his wife on two grounds, either one of which is sufficient, and both com-

bine in this case, viz: the litigation concerns her separate property, and his testimony relates to conversations and transactions occurring prior to marriage. Hurd's Stat. 1881, secs. 1, 5, "Evidence and Depositions;" *McNail* v. *Ziegler*, 68 Ill. 224; *Mueller* v. *Rebhan*, 94 id. 142.

The conveyance was made in consideration of marriage, which is a valuable consideration, and valid against the grantor's creditors. *Rockafellow* v. *Newcomb*, 57 Ill. 186; *Rose* v. *Sanderson*, 38 id. 247; *North* v. *Ansell*, 2 P. Wms. 618; *Barrow* v. *Barrow*, 2 Dickens, 504; *Partridge* v. *Gopp*, 1 Eden, 163; *Cadegan* v. *Kennett*, 2 Cow. 432; *Compton* v. *Cotton*, 17 Ves. Jr. 264; *Ex parte Mayor*, Montague, 293; *Hardy* v. *Green*, 12 Beav. 182; *Fraser* v. *Thompson*, 1 Gifard, 49; *Magniac* v. *Thompson*, 7 Peters, 361; *Frank's Appeal*, 59 Pa. St. 190; *Jones' Appeal*, 62 id. 324; *Smith* v. *Allen*, 5 Allen, 454; *Andrews* v. *Jones*, 10 Ala. 400; *Marshall* v. *Morris*, 16 Ga. 368; *Bank* v. *Marchand*, Charlton, 247; *Bunnell* v. *Witherow*, 29 Ind. 123; *Bonser* v. *Miller*, 5 Oregon, 110; *Eppes* v. *Randolph*, 2 Cal. 103; *Herring et al.* v. *Wickham et ux.* 29 Gratt. 629; *Prewit* v. *Wilson*, 13 Otto, 22.

Grantee had no notice of any fraudulent intent or insolvency of the grantor, nor was she put upon inquiry. *Prewit* v. *Wilson*, 13 Otto, 22; *Herring et al.* v. *Wickham et ux.* 29 Gratt. 629.

Mr. JUSTICE WALKER delivered the opinion of the Court:

On the failure of the State Savings Institution of Chicago, appellant was appointed receiver of its assets, by a decree of court. He, as such receiver, filed a bill to subject the property, the title to which is in controversy, to the payment of the debts of the insolvent institution. The bill alleges that David D. Spencer, one of appellees, who was at the time, and had been some years previously, the president of the institution, was indebted to it on a note for $39,240.73; that appellant, as such receiver, had sued on it, and recovered

a judgment; that a part of the indebtedness was incurred as early as the last of December, 1875. The bill also alleges Spencer's insolvency; that the premises were his homestead, in which he and his family resided up to the time of the failure of the bank. Being wholly insolvent, and in contemplation of a marriage subsequently solemnized between him and Mrs. Spencer, then Susan A. Dennis, he, on the 23d day of November, 1876, made and acknowledged a deed conveying his homestead to her; that the deed was made to hinder, delay and defraud his creditors. Service was had by publication. There being no answers filed, the bill was taken as confessed, and the relief prayed was granted. Defendants subsequently, on leave, under the statute, filed an answer. A hearing was had, resulting in a decree in favor of complainant. The case was brought to this court, and the decree of the court below was reversed, and the cause remanded. It will be found reported in 96 Ill. 570. The bill was amended by alleging that the deed of conveyance for the property was never delivered, and therefore no title passed under it. Another hearing was had, and the bill was dismissed, and the case is again brought to this court.

It is first insisted, that D. D. Spencer, being the husband, was not a competent witness in favor of the wife, and his evidence should not be considered. It is urged that he, under the statute, could not testify in her favor, except in case her separate property was concerned,—that whether or not this is her property, is the question here litigated. Had counsel taken the trouble to turn to the case of *McNail* v. *Ziegler*, 68 Ill. 224, he would have found that the same point was presented, and decided adversely to his position, and he most probably would not have urged the point. If he had turned to the case of *Mueller* v. *Rebhan*, 94 Ill. 149, he would have found that even if her separate property was not concerned, he was a competent witness, and might testify to transactions and conversations occurring before the marriage.

The testimony of the husband related only to such transactions and conversations, in this case. We are satisfied with the construction there given, and do not have the slightest disposition to overrule or modify those cases.

Having disposed of this preliminary question, we shall proceed to the consideration of the important questions of the case. The fact that the deed was made, acknowledged and recorded, is not contested, but it is denied it ever became effective, for the want of a sufficient delivery. From the long line and numerous decisions of this court the rule is well settled, without referring to the decisions of other courts, that to render a deed of conveyance operative to pass the title, there must be an unconditional delivery, or a delivery in *escrow*. This has been announced in almost every volume of our reports, and if it had not been, the rule is so elementary as to require the citation of no adjudged case for its support. We are not aware that the rule has ever been denied. But what acts constitute such a delivery has been the subject of much controversy, and we have held in many cases that the act must be such as to manifest an intention by the grantor to make a delivery, and to part with the possession and control of the instrument; and it has been said that intention may be gathered by acts, by words, or by both. It has been said it is not essential that the deed be delivered to the grantee, but may be to an agent or another for the grantee. This has been so repeatedly said that it should be familiar to the entire profession, hence we refrain from referring to the cases.

Was the deed delivered by the grantor to the grantee in this case, is the first and an important question. Mrs. Spencer swears that on the 11th, 12th or 13th of December, 1876, he handed her the deed, and after some conversation relating to it, she returned it to him for the purpose of having it recorded, and to take care of it for her; that she did not remember seeing it after he gave it to her on the date

referred to, until the 26th of August, 1877, when she gave it
to Judge Grant, her attorney, with some other papers and
her will, to take care of in her absence; that she was
extremely busy preparing for the wedding, and for that rea-
son did not remember the details; that she was positive she
saw the deed at that time. Her husband testifies that on the
12th or 13th of December, 1876, "I gave her the deed, say-
ing to her, 'there is the deed of the house on Thirty-ninth
street, which I have conveyed to you in accordance with my
promise and the conditions we have talked of,' or words to
that effect," and the testimony shows that he was to convey
to her this property if she would marry him. This evidence
most assuredly is clear and distinct, and if entitled to belief,
proves that the deed was delivered. The evidence is not
contradicted. It is not improbable or unreasonable. It is
consistent, and bears no marks that should condemn it as
untrue. It occurred as we would naturally expect under
such circumstances. Had it been more formal, it would have
been urged that it was so done to prevent suspicion of fraud.
It is true that the parties have a large interest in the event
of the suit; but the legislature has said that the testimony is
competent, and we are compelled to so receive it, and we have
no right to reject or disregard it unless contradicted or over-
come by other testimony or circumstances. There is the
evidence of no witness that impeaches their character for
truth, or rebuts their testimony.

It is, however, urged, that this evidence, in their second
depositions, is different from that when they testified before.
They, in their last depositions, testify as to the delivery of
the deed, because that had been made an issue in the case
after their first depositions had been taken. Why should
they, when they first testified, when the delivery of the deed
was virtually conceded by the bill then on file? This does
not tend, in the slightest degree, to impair or throw on their
evidence the slightest suspicion. Appellant seems to think

that in some manner its weight is impaired, because they knew, when they testified, that to recover, a delivery of the deed must be proved. We fail to appreciate the force of the objection. If this were a ground for disregarding evidence, it would overcome that of most, if not all, intelligent witnesses, as such witnesses know the relevancy and importance of their evidence at the time they testify. It would be to place a higher estimate on the evidence of the ignorant than the intelligent, and to render the evidence of attorneys worthless, because they would know, when testifying, the issue in the case, and the importance of their evidence. There can be no pretense that this knowledge impaired the credibility of these witnesses. We fail to find anything in the attending circumstances that overcomes, or requires us to disregard, their evidence, and it proves that after the deed was prepared, signed by Spencer, witnessed by a clerk in the bank and acknowledged by him, and certified by a notary public, he handed the deed to the grantee, his intended wife, but a day or two before their marriage.

Then what was the purpose of Spencer in giving the deed to appellee? He specified no other purpose than a delivery of a deed by a grantor to his grantee. Is it not the natural, if not the inevitable, conclusion, when a grantor, after making a sale of real estate to another, and prepares a deed conveying the premises, and gives it to the grantee without stating it is for a different purpose, that it is done as a delivery of the deed? Is it possible, even when nothing is said accompanying the act, for any reasonable mind to resist the conclusion that such was the purpose? It would seem it could not. Had he intended it for a different purpose, can any one suppose he would not have stated it? She was unconditionally placed in possession and unrestricted control of the instrument, and that was a delivery sufficient to, and did, vest the title to the property in her, and whatever afterwards became of the deed could not affect the title thus vested

in her.. After its delivery it was only evidence of the title thus conveyed.

Marriage, from the earliest period of the common law, has ever been held to be a sufficient consideration to support a conveyance of land, and such conveyances have ever been regarded as entitled to as full protection as conveyances made on the most ample pecuniary considerations,— that the grantee is entitled to hold the property precisely as if she had paid in money the full value of the property. This being true, and this conveyance, as all concede, having been made in consideration that the grantee would marry the grantor, that was a sufficient consideration to make it valid and binding on all parties, including creditors, if it can not be assailed on other grounds. These are plain and familiar propositions, that require the citation of no authorities for their support. Some propositions must be considered as axiomatic, and these are of that character.

It is, however, urged, that Spencer was at the time hopelessly insolvent, and that he, in making this conveyance, intended to perpetrate a fraud on his creditors. If this were conceded to be true, will it be contended that a purchaser, paying a full pecuniary consideration for the property, and not intending to aid or assist Spencer in committing the fraud, would not be protected, and would be compelled to surrender the property to the creditors, and lose the money he paid in good faith for it? Surely not. While the law is vigilant in protecting creditors against the fraud of their debtors, it never despoils or confiscates the property of innocent purchasers for their benefit. Such purchasers have the same right of protection in their rights as have creditors, and it must be remembered that Mrs. Spencer is entitled to the same protection as had she been a cash purchaser, and had paid every dollar the property was worth. If, under the circumstances, such a purchaser would be protected, she must be.

It is, however, insisted, that as the husband of appellee was utterly insolvent, if she knew or was charged with notice, we must presume she was a party to the fraud, and as to creditors the deed is void. If this were true, which we do not concede, where is the evidence that she had notice of the fact? We fail to find it in this record. She denies all knowledge of it. She says that from what she heard in general conversations with her uncle, with whom she lived, and who was a trustee in the bank of which Spencer was the president, she supposed he was a man of wealth and of high pecuniary and social position, and of the hundreds of thousands of persons residing in the city, and of the twelve or thirteen thousand creditors of the bank, there is not one shown to have even suspected his solvency, much less to have known he was a bankrupt. Then why require of her a knowledge of that which no one else even suspected? It is true that eight or nine months after, she and all others knew that he was then a bankrupt, and they may have suspected he was when the deed was made.

But it is said that Judge Grant, who was attorney for her husband as well as herself, said to Spencer, when consulted as to whether he could make a conveyance of the homestead to her as his contemplated wife, informed Spencer such a conveyance, unless he was indebted beyond his means to pay, would be good, but it was doubtful whether it could be sustained as good against creditors. He thinks, but does not positively say, that he in substance afterwards stated the same to her. She, on the contrary, testifies she had no recollection of such a conversation. But if it were conceded, would that be notice of any fact, if pursued, that would have led to notice, as appellant's counsel insists it was? The witness stated no fact. He did not say that Spencer was indebted a dollar, or that he believed or even suspected he was. He did not say it was so rumored, or had been suggested by any one. He named no fact calculated to arouse

a suspicion that Spencer was indebted to any one, much less that he was insolvent. We are unable to see why this should have put her on inquiry. Even if notice would affect the validity of the deed, none is shown, actual or constructive.

That marriage is a sufficient consideration to support a deed or marriage settlement, has become a rule of property, and it has everywhere been regarded and acted upon as unquestioned law, and no one can say the extent of values that would be changed and titles destroyed were it now held that marriage is not a consideration to support a conveyance of real estate. If it is necessary to change the rule, let it be done by the legislature, and its action will be prospective, and not retroactive, to unsettle titles and deprive men of their estates honestly acquired. They should not be deprived of their property as a class, that the creditors in this case, however meritorious, may get the proceeds of this property.

It is urged that a person indebted can not make a valid marriage settlement; that although not so in form, this conveyance was in substance such a settlement; that Spencer being hopelessly insolvent, it was a fraud on his creditors to make this deed. The power for a debtor to do so is sanctioned by a long line of decisions coming down from an early period, with the single limitation that the grantee shall not receive the grant to aid or assist the grantor to defraud his creditors. The books abound in cases that support the doctrine, with scarcely an opposing decision. Such was the rule of the common law of England when it was adopted by our legislature, and no reason is perceived why it is not adapted to our condition, and it is not repugnant to our institutions. It is not repugnant to, but coincides with, a sound public policy, to permit a woman, before assuming the marriage relation, to insist that a suitable provision shall be made for herself and the helpless offspring of the marriage. The public has a deep interest in the welfare of all of its members, and especially the tender and the helpless. Justice does not

demand that all other public interests shall yield to that of the creditor class. It has a right to be fully protected in all of its rights, but has no right to demand that all other interests shall be disregarded for the advancement of their interests. Community must be regarded by government as a whole, and its varied, if not infinite, interests are all equally entitled to protection at its hands. But this question is, in principle, settled when it is held that marriage is a sufficient consideration to support a conveyance, and that it must be protected precisely as a conveyance based on a full, valuable consideration. Post-nuptial settlements and conveyances depend on entirely different considerations. In such cases there is no consideration to support the conveyance. The marriage has already been consummated, and that can form no consideration to support such a settlement. In such cases the conveyance is voluntary, and a man must be honest before he is generous. Hence in such cases he must be free from debt, or, if indebted at the time of the settlement, he must retain ample means to discharge his indebtedness, or the settlement will be held fraudulent as to existing creditors. Ante and post-nuptial settlements depend on entirely different principles. The one is made on a sufficient consideration, and the other without any consideration.

On a full and careful consideration of all of the objections urged against the decree we fail to perceive any error, and it is affirmed.

*Decree affirmed.*