### HUGULEY *v.* LANIER, executor.

An antenuptial contract by which the intended husband, on behalf of himself, his heirs, executors and administrators, covenanted under his hand and seal, for and in consideration of the marriage

to be had and solemnized, that his executors, upon his death, should pay over to his intended wife the sum of $4,000, this sum to be her full and complete distributive share in his estate, she under her hand and seal covenanting that she would abide by the terms of the instrument, is not testamentary in its nature, but creates an absolute, irrevocable obligation binding upon his qualified executor, and upon which an action for the recovery of the money may be maintained after the husband's death.

February 23, 1891.  By two Justices.

Contracts. Marriage. Husband and wife. Debtor and creditor. Before Judge HARRIS. Troup superior court. April term, 1890.

Mrs. Sallie Huguley, widow of George Huguley, by her petition alleged that LaFayette Lanier, executor of George Huguley, was indebted to her $4,000 and interest, for that, on July 28, 1885, George Huguley entered into an antenuptial contract with the petitioner who was then unmarried, her maiden name being Sallie Hughes White, whereby, in consideration of the marriage afterwards to be solemnized,. he promised upon his death that his executors should pay her $4,000; that in pursuance of the contract the marriage was solemnized; and that he died in 1886, and Lanier was duly qualified as his executor more than twelve months before the bringing of this suit, and refuses to pay petitioner the $4,000 with interest thereon from the death of George Huguley, at which time the money to pay the same was in the hands of the executor. Attached as an exhibit was the contract, as follows:

The State of Georgia, ⎫   This indenture made and en-
    Troup County.    ⎭ tered into this 28th day of July,
A. D. 1885, between George Huguley and Miss Sallie White, both of said State and county, the said George Huguley voluntarily and of his own accord moving hereunto, witnesseth that the said George Huguley, for and in consideration of the marriage to be had and solemnized between himself and the said Sallie White, does for himself, his heirs, executors and administrators, covenant, grant, agree and direct that in addition

to the instructions given in his will and the codicil thereto attached, particularly and explicitly direct that his executors upon his death shall of the first money coming into their hands of my estate, and as soon as such money shall come into their hands as such executors after paying my just debts, expenses of last sickness and funeral expenses, pay over to my then widow, now Miss Sallie White, the just and full sum of four thousand dollars, taking her receipt for the same, this sum to be her full and complete distributive share in my estate, and she is not to participate further in my estate unless I should see proper to verbally give her any money or property before my death; and after my executors shall have delivered to her the four thousand dollars as herein directed, they will then execute my will as therein directed. This I do for the reasons that I do not wish any trouble or contention about my estate that I may leave at my death, that I desire and so intend that it may be distinctly understood, to make a permanent provision for my wife should I depart this life suddenly, as I have been informed by my physician that I have symptoms of heart disease and may be called hence without notice; and further that she my intended wife is agreeing to this arrangement as herein expressed, as witnessed by her written consent hereto.

Witness my hand and seal, the day and date above written.

Signed, sealed and delivered in duplicate in presence of

Mary S. Harris,                    George Huguley (L. S.)
B. L. Harris, Notary Public.

State of Georgia, ⎫   I Sallie White do hereby fully
     Troup County. ⎭ and without reserve, having read over and fully understanding the contents of the foregoing instrument made by my intended husband George Huguley, consent, agree to and will abide by the same. Witness my hand and seal this July 28th, 1885.

Signed and sealed in duplicate in presence of

Mary S. Harris,      Miss Sallie Hughes White (L. S.)
B. L. Harris, Notary Public.

At the trial the plaintiff offered this contract in evidence, but it was rejected on the ground that it was

not a deed or contract but only a testamentary paper, and had not been probated by the proper court and could not be sued upon. A nonsuit followed, and the plaintiff excepted.

F. M. Longley and N. J. Hammond, for plaintiff.

T. H. Whitaker, P. H. Brewster and R. A. S. Freeman, for defendant.

Bleckley, Chief Justice.

The superior court classified the stipulations of the instrument declared upon as testamentary in their nature. This was a total misconception. The instrument is not a conveyance, but a covenant to pay money. There was no attempt to establish between the parties the relation of donor and donee, or of testator and legatee, but the relation established by the covenant was that of debtor and creditor. In contemplation of marriage, the prospective husband, on behalf of himself, his heirs, executors and administrators, covenanted under his hand and seal, for and in consideration of the marriage to be had and solemnized, that his executors upon his death should pay over to his prospective wife the sum of $4,000, this sum to be her full and complete distributive share in his estate. On her part she covenanted, under her hand and seal, that she would abide by the terms of the instrument, and consequently that she would not participate further in his estate, unless he should see proper to give her any money or property before his death. These are the substantial provisions of the instrument as an antenuptial contract, and the suit is brought to recover the $4,000, the plaintiff alleging in her declaration that the marriage took place as contemplated, that her husband is dead and that the defendant is his qualified executor, having assets with which to make payment. The contract was absolute and irrevocable. The husband had no more power to

abrogate or revoke it than the wife had. It bound them both equally. It was a bar to any claim of dower which she otherwise would have had. Code, §1764; *Culberson* v. *Culberson*, 37 *Ga.* 296; Hamilton v. Jackson, 2 Jones & LaT. 295; Andrews v. Andrews, 8 Conn. 79; Naill v. Maurer, 25 Md. 532. Authority coincides with principle in rendering such an undertaking obligatory upon the husband's estate and legal representatives. Smith v. Stafford, Hobart, 216; Clark v. Thomson, Cro. Jac. 571; Goodwin v. Goodwin, *Id.* 570; Cage v. Acton, 1 Ld. Raym. 515; Acton v. Pierce, 2 Vern. 480; Milbourn v. Ewart, 5 T. R. 381; Rivers v. Rivers, 3 Dess. 190. And see Carter v. King, 11 Rich. 125; Godbold v. Vance, 14 S. C. 458.

A contract does not take on a testamentary character because its performance is postponed till after the death of the maker and devolves upon his representatives. Even a parol promise to be performed after death may be obligatory. Powell v. Graham, 7 Taunt. 580; Riley v. Riley, 25 Conn. 154. A promissory note may be made payable after the maker's death. Roffey v. Greenwood, 10 Ad. & El. 222; Bristol v. Warner, 19 Conn. 9. Or after the death of a third person. Cooke v. Colehan, 2 Stra. 1217, s. c. Willes, 393; Washband v. Washband, 24 Conn. 500.

Were the covenant in question considered as a contract to make a will, it would be none the less obligatory, for such contracts are enforceable, and if not performed, a recovery may be had for their violation. *Napier* v. *Trimmier*, 56 *Ga.* 300; Johnson v. Hubbell, 66 Am. Dec. 773, and notes; Manning v. Pippen, 11 Am. St. Rep. 46, and notes.

Of course treating the covenant as having this latter import would involve some change in the pleading as well as in the evidence. We think the pleader in this case adopted the right construction, and that the action

was well brought upon the instrument as an absolute undertaking, not to make a will leaving the plaintiff $4,000, but to pay that sum out of his estate as a debt chargeable upon the same. The court erred in excluding the instrument when offered in evidence to support the action. A full copy of the document is in the official report.                    *Judgment reversed.*