IN RE ESTATE OF W. T. SHEPHERD.

No. 42889.

MAY 14, 1935.

Bennett Cullison, for appellant A. R. Shepherd.

Smith & More, for appellee Elizabeth Booth Shepherd.

HAMILTON, J.—W. T. Shepherd and Elizabeth Booth entered into a marriage contract under date of June 9, 1924, by the terms of which it is provided:

"1. Each of said parties shall retain all property that he or she now has or may hereafter acquire free from all claims of inheritance, distributive share, homestead, support or any other interest commonly given by law to parties becoming husband and wife, and on the death of either of said parties or on the dissolution of the marriage relation, all property, real or personal, then held by either party shall belong to such party, and shall descend according to law to his or her heirs, or be disposed of by will as fully as if no marriage relation had ever existed between the parties hereto, subject only to the provisions hereinafter set out.

"2. The party of the first part hereby further agrees that in the event of the death of the party of the first part during the lifetime of the party of the second part the personal representative of the party of the first part shall pay to the party of the second part within eighteen months after the death of the party of the first part the sum of Fifteen Thousand Dollars ($15,-000.00), and the party of the second part hereby agrees to accept said sum in full satisfaction of all her claims against the party of the first part or his estate on account of the marriage relation hereafter existing between the parties hereto."

Then follows provision for payment in addition thereto of $150 per month for a period of one year after the death of the husband, or for such further time as may thereafter elapse before the payment of the $15,000 and this $150 monthly payment is referred to as "an adequate widow's allowance for the support of the party of the second part." It is further provided that the second party, the prospective bride, shall have the right to occupy the homestead property for life and to use the furniture in the home. It is then provided:

"5. It is further hereby agreed by and between the parties hereto that during the continuance of the marriage relation each of said parties shall retain the full power and right of disposition and control of all the property now possessed or hereafter acquired by said party excepting only the house and lot now occupied by the party of the first part as his homestead * * * to the same extent as if no such marriage relation had ever existed," etc.

This contract was signed by both parties and witnessed by two witnesses, but was not acknowledged and was never recorded.

The parties were married and lived together as husband and wife until the death of W. T. Shepherd on October 20, 1931. On June 21, 1930, said W. T. Shepherd executed his last will and testament, and on the 13th day of August, 1930, he executed a codicil thereto, which instruments, following his death, were duly admitted to probate, and his son, Allan Ramsey Shepherd, referred to in the record as A. R. Shepherd and Allan R. Shepherd, was duly appointed executor of his estate. The estate, as shown by the files in the clerk's office, consisted of real estate of the estimated value of $38,500, including a homestead in the town of Harlan, Iowa, personal property of the estimated value of $51,718.80, indebtedness of $45,297.80, including a mortgage of $22,839.75 on the 240-acre farm, and special bequests of $2,400. In addition to this, decedent had life insurance of $20,-510.48, $1,000 of which was payable to the widow, and the balance to the son. The record discloses that the executor has received or realized from the property of said estate in cash $13,-604.25; that he has paid out for funeral expenses and expenses of last sickness and costs of administration the sum of $5,681.67, and has paid from said funds on claims $6,884.93. In addition to this, he has filed personal claim for more than $12,500, which consists of an indebtedness of $3,875 owing to him by his father at the time of his death, $3,751.09, paid by the son upon claims of other creditors, assignments of which claims were taken by him, and $4,050 paid by him on the widow's monthly allowance under the antenuptial contract. A temporary administrator was appointed to pass on the son's claim, and his report, approving the claim in toto, was presented for approval in this proceeding. There is no issue on this report except the question of interest. The widow by answer objected to the allowance of interest upon the son's claim.

On May 4, 1934, Elizabeth Booth Shepherd, as widow of said decedent, filed in this estate what is designated "Application and Declaration of Widow," setting forth the antenuptial contract, the fact of their marriage, and that they remained husband and wife up until the death of the decedent on the 20th day of October, 1931, and resided on certain property in the city of Harlan, Iowa, as their homestead; alleging and claiming that she is entitled to have the property so settled upon her and stipulated to be given her under said antenuptial contract first to be paid to her from said estate after payment of expenses of ad-

ministration, funeral expenses, and expenses of last sickness; and praying that whatever claims, if any, are approved and established against the estate of W. T. Shepherd, deceased, be decreed junior and inferior to her rights and property coming to her under said antenuptial agreement or marriage settlement, and that she be decreed to have thereunder the amounts provided for in said antenuptial contract, together with the use of the home and the household goods and that the amounts so due unto her both in money and property be decreed to be a first lien upon the property of the estate of decedent, and that said executor be required to pay over to her the amounts so due her under said antenuptial agreement and under said will, and that the same be in lieu of her dower or distributive share of said estate.

To this declaration A. R. Shepherd filed an answer admitting the execution of the antenuptial agreement and marriage of the parties, the occupation by the widow of the homestead property, the payment of the monthly installments provided for the widow, and admitting that she is entitled to receive the sum of $15,000 from the estate of the decedent in accordance with the antenuptial contract, and denying all other allegations. For further answer he alleges that the widow is entitled to receive as a creditor of the estate of said deceased the sum of $15,000 to be paid at such time as the executor may elect; that by the provisions of said agreement no particular time for payment is fixed, and that the executor within reasonable limits is entitled to designate when the principal sum shall be paid; that the monthly payments were intended to be in lieu of interest on the $15,000; and that said claim for said principal sum should be established as a general claim of equal priority with all other claims of a like class and of equal priority with the claim of said executor. The executor filed an appearance to the application and declaration of the widow, waived notice of hearing thereon, and consented to immediate trial and determination of the issues presented by said application and declaration and answer filed by A. R. Shepherd, and to immediate trial and hearing upon all issues presented by said application as between said Elizabeth B. Shepherd and A. R. Shepherd, executor, without further notice.

Trial was had to the court on June 20, 1934, and, by stipulation of the parties, the issues to be determined and decided were agreed upon as follows: (1) Whether or not under the said con-

tract and agreement Elizabeth B. Shepherd is entitled to the payment of her claim thereunder, prior to the payment of other claims in this estate as prayed therein; (2) whether or not the principal sum provided for in said agreement to be paid from the estate of W. T. Shepherd, deceased, draws interest, and at what rate and for what period of time; (3) whether or not the payments of a monthly stipend or allowance provided for in said contract are to be construed as payments in lieu of interest, and whether said Elizabeth Shepherd is required to elect to either take said monthly payments or interest on the principal sum therein provided for.

It was further stipulated that the issues presented by the claims herein filed by A. R. Shepherd and the report of the temporary administrator, and the answer and objections to said claim and said report of temporary administrator, shall be as follows: Whether or not the claims set out and referred to in the report of temporary administrator which were paid by or purchased by A. R. Shepherd in his individual capacity draw interest and at the rate not to exceed 6 per cent from the time of the purchase or payment of said claim. It was further stipulated between the parties that as to the $15,000 principal amount, under the antenuptial contract herein referred to, the liability of the estate in said amount is conceded; that as to the principal amount of all claims filed by A. R. Shepherd the liability of the estate is conceded; that the report of the executor of his current accounts and receipts herein filed and prior reports are to be approved and confirmed; that, with reference to the claim of A. R. Shepherd, claims purchased by him or paid by him were just and lawful claims at the time of said purchase or payment; and that he paid to the holder of such claims the amounts as shown by the claims filed by said A. R. Shepherd. It was further stipulated that, at the time of the purchase or payment of said claims by A. R. Shepherd, he was executor of said estate, and is now such executor and had been long prior thereto, and that the court may take judicial notice of all files, reports, and claims and other matters of record filed in the estate of W. T. Shepherd, or so much thereof as shall be necessary for him to determine the case.

The lower court found that the widow was entitled to payment of the sum of $15,000 and interest, prior to the payment of the third and fourth class claims filed in said estate and prior

to the payment of legacies. He further found that the claims of A. R. Shepherd against the estate were just and correct and that the report of R. F. Swift, temporary administrator, appointed to pass upon said claims, should be approved, and that as to the sum of $4,050 advanced to the. widow by A. R. Shepherd, as shown by the report of the temporary administrator, the claim made thereon was entitled to priority of payment over the amount of $15,000 and interest due the widow, the same being claim for advancements of money to said widow by the claimant, A. R. Shepherd, and that the other items due said Shepherd were junior and inferior to the $15,000 claim of the widow, and that the claimant, A. R. Shepherd, was entitled to interest on the items of his claim and additional claims at the rate of 6 per cent per annum as reported by the temporary administrator. The court further found that the report of the executor, A. R. Shepherd, should be approved, except so far as the same shows the payment of any third and fourth class claims and bequests as being prior and superior to the said amount of $15,000 and interest due the said widow, and that as to such payments said report should not be approved. All parties were given exceptions, and both parties have appealed from this order. The claimant, A. R. Shepherd, and A. R. Shepherd, executor, will be designated herein as appellant.

■■■ It will thus be seen from the issues stipulated that there are two separate and distinct matters presented to the court. We will first determine the issue between the widow on her application and declaration, based on her antenuptial contract, and A. R. Shepherd as claimant against said estate on his answer, the issue being as to whether or not the claim of the widow under the antenuptial contract is prior and superior and entitled to preference over the third and fourth class claims against said estate.

In considering the questions involved under the terms of the antenuptial agreement, we have treated the action as in equity.

The appellee, in her brief, states: ''The case was tried without the intervention of a jury or the demand for one by either party, by the court as if in equity.'' And likewise, on the title page, she states that the action is ''In Probate and Equity'', and it appears to have been so tried and determined by the lower court on this theory, and no question was raised by appellant,

nor does he now raise any such question, although the abstract of record contains no statement, either by the parties or the court, to the effect that it was to be so considered and tried as in equity.

We have held that an antenuptial contract is in the same category as other contracts, and is construed by the same rules as other contracts, and, if fair on its face and free from fraud, it is as legal and enforceable as other contracts. Cummings v. Wood, 197 Iowa, 1356, 199 N. W. 369, 370; In re Estate of Uker, 154 Iowa, 428, 134 N. W. 1061. As said in Cummings v. Wood, supra:

"Its primary purpose is to make a property settlement before marriage between the parties, whereby their rights respectively are determined independently of the marital statute, and which would otherwise obtain. In construing such a contract, the intention of the parties is the thing indispensable to be discovered, and in searching for the intent, an antenuptial contract, like a will, is to be taken by its four corners. * * * The intention of the parties must be determined from the language of the instrument itself, the circumstances and conditions of the contracting parties, the property existent at the time of entering into the contract, and other matters which would constitute the inducement or reason for the making of the antenuptial agreement. In re Estate of Hubinger v. Weismann, 150 Iowa, 307, 130 N. W. 155. * * * Agreements of this character are looked upon by the courts with favor, and are liberally interpreted to carry out the intentions of the parties thereto. * * * The very purpose in the execution of such a contract is to fix and determine the interest that the parties have respectively in the property of the other."

■■■ Antenuptial contracts of this character are valid, binding, and enforceable, and are based upon the consideration of marriage, which is looked upon by the courts as of the very highest known to the law. Veeder v. Veeder, 195 Iowa, 587, 192 N. W. 409, 29 A. L. R. 191; Fisher v. Koontz, 110 Iowa, 498, 80 N. W. 551; In re Estate of Mansfield, 185 Iowa, 339, 170 N. W. 415.

There is very little dispute over the facts. In construing antenuptial contracts, the courts endeavor to arrive at the intention of the parties by taking the instrument by its four corners and endeavoring to ascertain just what the parties meant. We

not only have the antenuptial contract in this case, but we have the will of W. T. Shepherd, both of which throw some light upon what was in the minds of the parties at the time the antenuptial contract was entered into. From the inventory filed in the estate, it will be noticed that there are listed some sixty-five or seventy thousand dollars worth of bonds and stocks, in addition to real estate valued at $30,000, subject to a mortgage indebtedness of $22,839.75, and a homestead property valued at about $6,000. At the time of the trial, these bonds and stocks were apparently of little value, but at the time the antenuptial contract was entered into and the will of W. T. Shepherd was executed, it is plainly evident that the parties assumed that upon the death of W. T. Shepherd there would be ample funds to pay all his indebtedness and to pay the amount agreed upon by the antenuptial contract and leave a considerable balance in his estate. This is plainly evident from the residuary clause in his will, whereby he provides that his executor and trustee shall pay from the income of said residuary estate the sum of $1,500 per year to his wife, for the remainder of her natural life. This was in addition to what he had provided for her under the antenuptial contract.

We think it is fair to assume that neither of the parties to this contract had in mind, when they entered into the antenuptial agreement, that the debts against his estate were to be taken into consideration at all. Not having contemplated any shortage in funds, there was no effort in this antenuptial contract to create an express trust or provide for a lien upon any specific property. The parties evidently believed that this was unnecessary in an estate which was probably valued at that time at over $100,-000. There is no claim in this record anywhere of bad faith or fraud of any kind upon the part of either of the parties to this contract or on the part of the son, A. R. Shepherd, the other claimant, who is likewise the executor and trustee of this estate. Under the antenuptial agreement, the husband was left free to dispose of his property as he saw fit. He could have executed deeds of conveyance, bills of sale, and sold and disposed of his entire estate without the consent of his wife or without her joining in the execution of the instruments, save and except as to the homestead tract. It is plain from the antenuptial contract and the will that W. T. Shepherd was very solicitous of the interests and welfare of his wife, and desired to provide for her in the

event she outlived him. The court is thus confronted with a condition brought about by the shrinkage in values of property which was not contemplated by the parties to the contract. However, the court is powerless to make contracts for the parties, and we are compelled to take the contract as we find it.

There is not very much dispute between the parties about the law. The entire dispute is over the application of the law to this particular contract. The contract, it will be observed, is purely executory. The relation between the estate and Mrs. Shepherd is that of debtor and creditor, evidenced by this executory contract. It is the contention of the appellee that the widow was entitled to a preference over the third and fourth class claims. It is difficult from the argument to understand exactly upon what this claim is based. There is no provision for such preference under our statute. That this is an enforceable contract against this estate is conceded and admitted by both parties. Marriage has always been considered as of the highest consideration, and courts have uniformly upheld such contracts when fairly entered into between the parties. Justice Story of the United States Supreme Court, in the case of Magniac et al. v. Thompson, 7 Pet. 348, 349, 395, 8 L. Ed. 709, at page 725, said:

" 'The consideration being valuable, if the contract, *whether executed or executory,* is made in good faith, with one having no notice or knowledge of any fraud, covin or collusion to defraud creditors, performance may be enforced, or voluntarily made, and the contract carried into execution, at any time, either in the whole or in part, as is in the power of the party.' * * * 'That a settlement made before marriage, makes the intended wife a purchaser for a valuable consideration; if agreed to be made, she is a creditor, and protected in the enjoyment of the thing settled, *and entitled to the means of enforcing what is executory,* if the transaction was bona fide and without notice or fraud.' " (Italics ours.)

In the case of Collins v. Collins, 72 Iowa, 104, 33 N. W. 442, 443, in construing an antenuptial contract which contained the following language:

"Third. 'In addition to the amounts above mentioned, there is, at the death of said E. A. Collins, Sr., to be paid out of his estate to said Maria, $1,000, the same to become due and

payable at the death of E. A. Collins, Sr.,' '' this court said: ''The $1,000, under the contract, was to be paid upon the death of Mr. Collins. It became and was a debt and charge against the estate, and we see no reason why the administrator should ask any directions of a court of equity in relation thereto.''

In the case of Otis v. Spencer, 102 Ill. 622, 40 Am. Rep. 617, an action to set aside a deed on behalf of the creditors, the deed having been made in accordance with an antenuptial settlement, the Illinois court said:

''Marriage, from the earliest period of the common law, has ever been held to be a sufficient consideration to support a conveyance of land, and such conveyances have ever been regarded as entitled to as full protection as conveyances made on the most ample pecuniary considerations,—that the grantee is entitled to hold the property precisely as if she had paid in money the full value of the property.''

There being no provision in this contract either for the settlement of any specific property or providing for a lien upon any specific property, the widow is relegated to the position of a creditor of equal priority with other creditors of the same class.

In the case, In re Warner's Estate, 158 Cal. 441, 111 P. 352, 353, we find this language:

''The part of the agreement providing that the appellant was, upon Warner's death, to receive 'from his estate, without any administration, the sum of $1,000' is not in our opinion to be interpreted as requiring Warner to provide this sum by will, or by other affirmative means. It made her a creditor, and authorized collection of her claim in the mode applicable to creditors of estates. The phrase 'without any administration' is given full effect by reading it as allowing the appellant to receive the sum in advance of complete administration and distribution of the estate. As a creditor she could so receive it.''

In the case of Huguley v. Lanier, 86 Ga. 636, 12 S. E. 922, 22 Am. St. Rep. 487, the court construed the antenuptial contract as testamentary in character, and Chief Justice Bleckley, in discussing this question, said:

''This was a total misconception. The instrument is not a conveyance, but a covenant to pay money. There was no attempt

to establish between the parties the relation of donor and donee, or of testator and legatee, but the relation established by the covenant was that of debtor and creditor. In contemplation of marriage, the prospective husband, on behalf of himself, his heirs, executors, and administrators, covenanted under his hand and seal, for and in consideration of the marriage to be had and solemnized, that his executors, upon his death, should pay over to his prospective wife the sum of $4,000, this sum to be her full and complete distributive share in his estate.''

We think the court was in error in establishing the claim of the widow for the $15,000 provided for in the antenuptial contract as a preferred claim against said estate.

It is well to note that this antenuptial agreement was not acknowledged and not made a matter of record. Neither is there any evidence that any of the claimants had notice or knowledge of the existence of said contract prior to the death of decedent. They were therefore "existing creditors" within the meaning of the recording statute, section 10015 of the 1931 Code.

It is contended by the appellant that the provision for the monthly payments which is designated in the antenuptial contract as "an adequate widow's allowance" was intended to take the place of interest on the $15,000. There is no merit in this contention. Clearly, this money was due at the expiration of eighteen months from the date of the decedent's death by the terms of the antenuptial agreement, and she is entitled to interest from said date as found by the trial court.

The appellee concedes the validity of the appellant's claims. The lower court found that as to the amount of $4,050 advanced to the widow by A. R. Shepherd, and for which he had filed claims against this estate—that as to said amounts "his claim should be prior to the payment of the $15,000.00 and interest due the widow.'' In this we think the lower court was correct, as this was in the nature of an allowance to the widow for her support and was paid to her out of his own pocket as an expense of the estate, for the reason that there was not sufficient cash available belonging to the estate to pay the same, and the widow, having received the benefit thereof, should not be permitted to complain.

As to all other claims of the third class, including the claims of appellant, they should be established in accordance with the

report of the temporary administrator with interest thereon as shown by said report and to be of equal priority with the claim of the widow for $15,000, with interest thereon at 6 per cent per annum, payable annually, beginning 18 months after the death of said decedent.

It is strenuously contended by the appellant that, inasmuch as there was a concession made in the stipulation between the parties to the effect ''that the report of the executor of his current accounts and receipts herein filed and prior reports are to be approved and confirmed,'' the judgment of the trial court, as to claims already paid and payment of which is shown by this report and prior reports, is contrary to the facts as stipulated and against the express concessions of the parties. We think this concession cannot be construed as having reference to the priority of payment, but only in the approval of the reports as to the amounts of the receipts and the amounts of the payments. We think the third-class claims, whether paid or unpaid, should stand on an equal priority with the widow's claim.

■■ It is also contended on behalf of the appellee that no interest should be allowed on the claim of the executor for money paid out of his own individual account, that there was money in the estate at certain times which could have been used, and therefore he was not warranted in paying money out of his own pocket, and at this time claiming interest thereon. This contention is borne out to a small extent. However, the evidence shows that ordinarily the payments advanced by the executor from his individual funds were made in the interest of the estate to avoid disposition of property on an unfavorable market, and we are therefore inclined to agree with the holding of the lower court in allowing interest on all claims allowed and established by the order and judgment of the lower court.

The motion to strike abstract and to affirm, which was ordered submitted with the case, is hereby overruled, and cost of this appeal is to be taxed to appellee.

The case is therefore reversed in part, affirmed in part, and remanded, with instructions to prepare an order in accordance with the findings of this court.

Reversed in part, affirmed in part, and remanded, with instructions.

All the Justices concur.