CHRISTINA CHRISTIANS, appellant, v. HARRY W. CHRISTIANS and RAY F. CHRISTIANS, individually and as executors of the will and codicil of CHAS. F. CHRISTIANS, appellees.

No. 47735.

(Reported in 44 N.W.2d 431)

■ 

■ 

OCTOBER 17, 1950.

George R. Ludeman, of Mason City, for appellant.

Floyd E. Ensign, of Northwood, for appellees.

OLIVER, J.—The contract between plaintiff and decedent, Chas. F. Christians, was made July 2, 1928, two days before their marriage. He was then aged fifty-eight years and was a widower with two adult sons who are the defendants herein. He had operated a general store and served as postmaster at Grafton, Iowa, a town of about two hundred and fifty population. Shortly before this he had retired from the mercantile business and transferred the store to his sons. He continued to act as postmaster for some years. He died in 1948, aged seventy-eight years.

Plaintiff, aged forty-five years in 1928, lived in Minnesota. She had six children by her former husband from whom she had secured a divorce about 1914. She had received only $10 per month alimony and had supported herself by cooking in hotels and doing other work. Apparently she had no property. She had lived at Mr. Christians' home for two weeks prior to her

marriage to him. After the marriage she and Mr. Christians continued to occupy the home and for several years plaintiff's youngest daughter, aged fourteen years, and an adult son of Mr. Christians lived with them.

The antenuptial contract was prepared by Paul G. Thonn, attorney for Mr. Christians. The preamble recites in part: first party (Mr. Christians) has fully informed second party (plaintiff) of his financial situation and the parties desire to make a fair and reasonable provision for plaintiff in lieu of the rights which she might or could have as wife or widow, or otherwise, in the real property of Mr. Christians. The contract provides, if plaintiff survives Mr. Christians as his widow she shall receive $5000 "in place and stead of all rights, which, as widow, second party might otherwise have, either as dower in the real estate of the first party, or as a distributive share of the personal property and estate * * *."

Plaintiff alleged she was without knowledge and Mr. Christians did not advise her the extent and value of his property; that she did not know and was not advised the rights of a wife in her husband's property upon his death; that the provision for her benefit was disproportionate to the worth of her husband and inadequate to provide for her, and that she was overreached and defrauded. The trial court held the contract was not fraudulent, was fair and was valid.

The petition alleged Mr. Christians was worth more than $150,000 when the contract was executed. At the trial plaintiff offered in evidence certified copies of certain deeds to and from Mr. Christians to real estate in Worth County, Iowa, and a pamphlet or magazine issued by the Iowa State College of Agriculture, entitled "Iowa Farm Science" and containing a chart showing the average Iowa farm values in each county for each year from 1912 to 1948.

The pamphlet was offered "for the purpose of determining the value of this estate" in 1928. Plaintiff placed in evidence also the probate inventory filed in the estate of her husband. There was no testimony with reference to any of this property or its value in 1928, and the trial court correctly held there was no proof of such value. The court stated it was doubtful whether the Iowa real estate in question, in 1928, was worth as much as

$20,000. Plaintiff listed also a building in St. Paul, Minnesota, in which decedent had an interest but did not show its 1928 value.

Most of this property was listed in the inventory of decedent's executors. This fixed the estimated net value of decedent's estate in 1948 at about $75,000. However, the trial court pointed out that in 1928 real estate values were very low, and stated, "It would be a very easy matter for the property of Chas. F. Christians to increase threefold or better between 1928 and 1948."

Attorney Thonn testified decedent came to his office with plaintiff and both took part in the conversation: "Mr. Christians said that he was along in years and planning on getting married, and he felt that the property he had had been made by himself, his first wife and the boys, the family as now constituted, and that he felt that the bulk of the property should in fairness go to them because he was more or less retired even at that time." Mr. Thonn told them a full disclosure of the property of each should be made to the other and told them to do this before they returned to sign the contract which he would prepare.

Upon their return he again emphasized the need of this and read and explained to them the paragraph in the contract which states Mr. Christians has made such disclosure. They said the disclosure had been made. Mr. Thonn knew generally of Mr. Christians' property. He "tried to be very careful" and asked Mr. Christians if he had made disclosure of the farms, of his moneys and credits, his notes, whatever else he had—Christians said "yes," but that "it was hard to give the exact amount of the value of the farms because there are differences of opinion as to that at any given time." Mr. Thonn did not see any list of the property but the various items of the property were mentioned. He read and explained the contract to plaintiff and told her she was strictly limiting her rights in her husband's property by agreeing to $5000. She seemed to understand and approve it, saying she was not marrying Mr. Christians for his money but they thought they would get along well and she wanted a home.

Plaintiff testified she had little education and no experience with legal matters, did not understand the rights of a wife in

her husband's property; the contract was read to her but she did not understand it, did not know and was not advised of the size of Mr. Christians' estate and depended upon him to protect her interests.

██ ██ An antenuptial contract is in the same category and is construed by the same rules as other contracts. If fair on its face and not procured by fraud it is as legal and enforceable as other contracts. In re Estate of Shepherd, 220 Iowa 12, 19, 261 N.W. 35, 39; Lungren v. Lungren, 197 Iowa 519, 197 N.W. 646. One assailing such a contract has the burden of establishing its invalidity. In re Estate of Parish, 236 Iowa 822, 831, 20 N.W.2d 32, 36; In re Estate of Thorman, 162 Iowa 316, 320, 144 N.W. 5.

██ ██ However, because of the relation of trust and confidence between the parties, the law requires the full and frank disclosure of all material matters bearing upon the subject matter of the contract. A concealment or the practice of deceptive methods by one party by which the other is misled will be sufficient warrant for setting it aside. Rankin v. Schiereck, 166 Iowa 10, 15, 147 N.W. 180. And where the provision for the wife is apparently unjust or grossly inadequate with respect to the size of the husband's estate a presumption arises that the contract was not fairly procured by the husband and the burden of going forward with evidence to rebut this presumption is cast upon him or those claiming under him. Fisher v. Koontz, 110 Iowa 498, 500, 80 N.W. 551; Rankin v. Schiereck, 166 Iowa 10, 15, 147 N.W. 180; In re Estate of Parish, 236 Iowa 822, 831, 20 N.W.2d 32, 36; 26 Am. Jur., Husband and Wife, section 316; 41 C. J. S., Husband and Wife, section 97(c), page 570.

██ ██ The record in the case at bar does not show the size of Mr. Christians' estate in 1928. The trial court estimated the probable value of the Iowa real estate, which apparently constituted the bulk of the estate, at less than $20,000. It could not be said the $5000 provision for plaintiff from an estate of that size would be unjust or grossly inadequate. Each contracting party had a family by a former marriage. Mr. Christians' desire that the bulk of his property pass to his sons, who had helped him accumulate it, was neither unnatural nor improper. In re Estate of Parish, 236 Iowa 822, 835, 836, 20 N.W.2d 32, 37; Nesmith v. Platt, 137 Iowa 292, 299, 114 N.W. 1053.

The difficulty in this case is not with the 1928 antenuptial contract but with the subsequent inflation which increased the money value of Mr. Christians' property and depreciated the purchasing power of plaintiff's $5000 settlement. That neither party to the contract contemplated this change in conditions does not require the cancellation of the contract. In re Estate of Shepherd, 220 Iowa 12, 21, 261 N.W. 35; Lungren v. Lungren, 197 Iowa 519, 197 N.W. 646. The record does not show the provision for plaintiff was unjust or disproportionate to Mr. Christians' worth in 1928. In this connection we may observe the court ordered a widow's allowance of $1500 paid to plaintiff. The briefs suggest the antenuptial contract bars plaintiff from further benefits. Whether the rule of McMinimee v. McMinimee, 238 Iowa 1286, 30 N.W.2d 106, idem 239 Iowa 1111, 33 N.W.2d 495, as to the homestead and the exempt personal property, is here applicable is not before us. Upon those propositions we express no opinion.

The trial court, who saw and heard the witnesses, found that no fraud, deceit or concealment was practiced against plaintiff, that she was not overreached or misled and was fully aware of the effect of the contract upon her rights. These findings are entitled to substantial weight. Although the evidence at some points is in conflict we concur in them.—Affirmed.

All JUSTICES concur.