In re The MARRIAGE OF Patricia
Ann SELL and Arnold P. Sell

Upon the Petition of Patricia Ann
Sell, Appellant,

And Concerning Arnold P.
Sell, Appellee.

No. 88–643.

Court of Appeals of Iowa.

Nov. 27, 1989.

James L. Chipokas of Chipokas & Flitz, Cedar Rapids, for appellant.

Gary Boveia of Boveia Law Office, Waverly, for appellee.

Considered by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

DONIELSON, Judge.

The parties were married on June 10, 1978. Both Patricia and Arnold signed an antenuptial agreement on June 1, 1978. Arnold brought over $100,000 in assets to the marriage and Patricia brought approximately $20,000 in assets to the marriage. Patricia contends the antenuptial agreement was not openly and fairly procured. She contends she was unaware of the extent of the property Arnold owned prior to the marriage. Arnold asserts Patricia was not unsophisticated, she owned real estate, and she brought several thousand dollars of her own property into the marriage.

Patricia raises two arguments with regard to her automobile loan. She argues the court erred in 1) not considering the fact Arnold failed to make seven of her auto payments as ordered by the court, and 2) requiring her to obtain a loan for her car, and allowing Arnold to offset any car payments he makes against the annual $1,000 payment he is to make to her pursuant to the decree.

Patricia challenges the value attached to the stock by the court. She points to the discrepancies in the evidence her ex-husband tendered during the proceedings. Arnold explains the variance in valuation as the difference between the tax treatment of the stock and the actual value of the stock.

Finally, Patricia argues the property division made by the court was inequitable. She states the property division is not equitable in that the decree leaves her with no home, no savings, a car with little if any equity, and an award of equity in the parties' former home of only $3000. She argues the parties were able to accumulate substantial assets during the marriage, and despite her contribution of her own home, her salary and other efforts during the marriage, the decree effectively leaves her destitute. She argues the circumstances of this case justified an award of alimony.

Our review of this equitable proceeding is de novo. Iowa R.App.P. 4. In equity cases, especially when considering the credibility of witnesses, we give weight to the factual findings of the trial court, but we are not bound by them. Iowa R.App.P. 4.

I. *Antenuptial Agreement.* Patricia contends the parties' antenuptial agreement was not openly and fairly procured and the trial court erred in concluding it precluded her from having an equitable interest in Arnold's real estate in Florida. Specifically, she claims Arnold did not fully disclose to her the extent of his assets prior to the signing of the antenuptial agreement.

In making a property disposition, a court may take into consideration the provisions of an antenuptial agreement. Iowa Code § 598.21(1)(*l*) (1989). Our courts

have recognized a general presumption in favor of antenuptial agreements. *In re Marriage of Winegard*, 278 N.W.2d 505, 512 (Iowa 1979), *cert. denied*, 444 U.S. 951, 100 S.Ct. 425, 62 L.Ed.2d 321 (1979).

Our courts will uphold antenuptial provisions "if they are fair between the parties and fairly, freely, and understandingly entered into...." *In re Estate of Ascherl*, 445 N.W.2d 391, 392 (Iowa App.1989), *quoting, Peet v. Monger*, 244 Iowa 247, 254, 56 N.W.2d 589, 593 (1953). *See also Norris v. Norris*, 174 N.W.2d 368, 369 (Iowa 1970); *Britven v. Britven*, 259 Iowa 650, 657, 145 N.W.2d 450, 454 (1966).

■ Upon our de novo review of the record, we find Patricia did not adequately raise and preserve the issue of Arnold's disclosure (or lack thereof) before the trial court. The only testimony she gave with regard to this issue was her apparent surprise when Arnold took her to his attorney's office and asked her to sign the agreement. At no point did she testify as to whether Arnold had disclosed the extent of his assets to her prior to the marriage. At most, her testimony may be construed as a challenge to some of the circumstances surrounding the execution, i.e. Arnold's unilateral decision to seek preparation of the agreement, and his decision to escort Patricia to his attorney's office and "surprise" her with this agreement less than two weeks before their wedding day.

■ What Patricia's testimony does not raise is any challenge to the validity of the agreement based on Arnold's alleged failure to fully disclose his assets to her. Because of the relation of trust and confidence between the parties, the law requires the full and frank disclosure of all matters bearing upon an antenuptial agreement. *Christians v. Christians*, 241 Iowa 1017, 1021, 44 N.W.2d 431, 433 (1950); *Cf. In re Marriage of Cerven*, 335 N.W.2d 143, 145 (Iowa 1983) (court disregarded effect of antenuptial agreement because both parties conceded husband had failed to make full and fair disclosure of his assets prior to execution of agreement). Actual knowledge of a prospective spouse's assets allevi-

ates the need to prove full and frank disclosure. *See Ascherl*, 445 N.W.2d at 393.

■ As Patricia did not challenge the agreement below based on a failure to disclose assets, we will not address the issue at this time. With regard to other aspects of the execution of the agreement, we conclude it was fairly procured. Patricia was an adult woman with business experience. She was also the owner of real estate when she was presented with this agreement. Patricia testified she read the agreement prior to signing it, and Arnold testified his attorney went over the agreement with her "item-by-item" and she made no objection to signing it. We cannot conclude her signature to this agreement was improperly induced or that the agreement is invalid.

The antenuptial agreement specifically excludes from a dissolution disposition any property owned prior to execution of the agreement and any proceeds therefrom. The trial court judge specifically found Arnold's real estate in Florida was obtained through proceeds derived from the sale of his premarital property. As this property was encompassed within the terms of the antenuptial agreement, the court correctly set it aside and did not consider it when making the property disposition.

■ **II. *Patricia's Automobile.*** On June 22, 1987, the trial court judge entered an order with regard to Patricia's request for temporary support and attorney fees. In lieu of requiring Arnold to make support payments, the court ordered him to pay numerous debts of the parties, including Patricia's monthly car payment. Arnold never made these payments, and he admitted this at trial. It is this court's finding that Arnold was responsible for seven of Patricia's car payments, and he failed to meet this obligation. The entry of a dissolution decree should not terminate this obligation. Arnold is not released from this debt and is ordered to pay Patricia this accrued amount.

We have also examined Patricia's claim that the trial court's order requiring her to obtain her own loan for her auto was inequitable. Specifically, she challenges the decree's provision that if she fails to get her

own loan, and Arnold makes payments on the existing joint loan, he may deduct those amounts from the court-ordered annual property settlement payment he is to make to her.

The court's decision is not inequitable. Our decision does not let Arnold escape liability for the court-ordered car payments he was ordered to make, yet it ensures him the opportunity to protect his credit rating should Patricia fail to obtain her own loan.

**III. Stock.** Patricia contends the trial court erred in valuing Arnold's TV5 stock at zero. Arnold produced varying estimates as to the stock's value. When we find the value placed on an asset by a trial court to be well within the permissible range of evidence, we will not disturb it on appeal. *In re Marriage of Griffin,* 356 N.W.2d 606, 608 (Iowa App. 1984). Arnold testified as to the nonassignability of this stock and thus its resultant lack of value. Patricia's evidence did not refute this position, and we cannot find the trial court erred in valuing this stock at zero.

**IV. Property Division.** Patricia contends the property division was inequitable in this case. Each partner in the marriage is "entitled to a just and equitable share of the property accumulated through their joint efforts." *In re Marriage of Havran,* 406 N.W.2d 450, 452 (Iowa App. 1987).

Upon our review of the record, we find the trial court erred with regard to division of the equity in the Highland property. The trial court correctly noted the parties each contributed a substantial sum to this property. The evidence reveals this was their family home from 1978 to 1984. The proceeds from the sale of each of their prior homes went into the purchase and maintenance of this home. The home was sold on contract in 1984, and the court estimated the equity in this home to be $17,045. Despite Patricia's contributions to this home, the court awarded her only $3,000 of the net equity. This is not eq-

uitable, and we order this amount to be increased to one-half of the equity, or $8,522.50. Arnold was ordered by the trial court to pay Patricia $3,000 in annual installments of $1,000. These annual payments are to continue until Patricia has been paid her full half of the Highland home's equity, and we modify the trial court's decision to require interest of 9% on these payments.

**V. Alimony.** Patricia claims she should have been awarded alimony. Alimony is not an absolute right; an award depends upon the circumstances of each particular case. *In re Marriage of Fleener,* 247 N.W.2d 219, 220 (Iowa 1976). The discretionary award of alimony is made after considering those factors listed in Iowa Code section 598.21(3). *See In re Marriage of Hayne,* 334 N.W.2d 347, 350 (Iowa App.1983). When determining the appropriateness of alimony, the court must consider (1) the earning capacity of each party, and (2) their present standards of living and ability to pay balanced against their relative needs. *In re Marriage of Estlund,* 344 N.W.2d 276, 281 (Iowa App. 1983).

Patricia and Arnold have demonstrated similar earning capacities. She held a responsible job in Independence as the executive director of the Chamber of Commerce. The trial court ordered Arnold to assume most of the parties' debts. He is not in an especially secure financial position at this time. In light of the property and debt division, as modified by this court's decision, alimony is not warranted in this case.[1] Costs of this action are assessed against Arnold.

AFFIRMED AS MODIFIED.

---

1. Contrary to Patricia's allegations, we find no merit in her contention that the trial court's property and alimony decisions were "punishment" for her lack of candor with regard to the

child support payments she received throughout     her marriage to Arnold.