W. G. PEET, Appellee, v. MATILDA PEET, Appellant.

1.   **Antenuptial Agreement**: VALIDITY.  An antenuptial agreement provided, that the parties thereto should not in any manner be restricted in the control or disposition of their respective properties; that the woman thereby released all right of dower or homestead in the property of her prospective husband, and in lieu thereof should receive, in case she survived her husband, the interest on the sum of three thousand dollars from the date of the latter's death, to be paid annually so long as she remained his widow.  *Held*, that in view of the circumstances, that at the time of the agreement both parties were over fifty years of age, the man, a widower with three children, and worth about fifty thousand dollars, the woman without property, and dependent upon her brother and her personal earnings for support; that the parties having been acquaintances and neighbors for a number of years, the woman might be presumed to know the amount of the other's property; and that the woman had a general knowledge of the rights she would have, as wife, in such property; the agreement was not so illiberal as to raise a presumption of the use of undue influence over the woman, nor was it so unreasonable and unconscionable that it ought not to be enforced, and the evidence fails to show any undue influence in fact.

2.   ———— : ABANDONMENT.  The joinder of the wife with her husband in executing conveyances of real estate, which might under said agreement have been executed without her, will not operate as an abandonment of said contract.

3.   ———— : HUSBAND'S DESERTION OF THE WIFE.  The removal of the husband during his last illness, with his consent, to the home of his son, to the end that he might be better cared for, his wife being unable to care for him without the assistance of neighbors, and her nervous condition being such as to render her presence irritating to her sick husband, was not such a desertion of the wife by the husband as to prevent the enforcement of the above agreement.

4.   ———— : RIGHTS OF DEVISEE TO ENFORCE.  A devisee under a will is entitled to have his title to real estate so received quieted as against any claims of the wife of the testator, who has released by an antenuptial agrement the interest which the law secures to the wife in the estate of her husband.

*Appeal from Jones District Court.*—HON. J. D. GIFFEN, Judge.

FRIDAY, OCTOBER 17, 1890.

THE plaintiff claims title to certain real estate, as legatee under the will of James M. Peet, deceased, and asks to have his title quieted as against appellant, the widow of said deceased. The plaintiff's claim for this relief is based upon an antenuptial agreement entered into between the deceased and appellant before their marriage. The appellant admits, upon production of the instrument, that she signed the same, but alleges, as defense thereto, that it was obtained by James M. Peet taking advantage of the confidential relation existing between them, by undue influence, and that the contract is unfair, unconscionable and void ; that the deceased repudiated and abandoned said contract, and that he deserted her prior to his death; and that the plaintiff is not entitled to enforce said contract. A decree was entered in favor of the plaintiff granting the relief demanded, from which the defendant appeals.

*Remley & Ercanbrack* and *F. L. Weaver*, for appellant: When an antenuptial contract is set up against the woman's claim for dower, the burden is upon those who allege it to affirmatively prove that the husband acted in perfect good faith, and took no advantage of his influence or knowledge, and that the contract was fair, adequate and equitable. *Appeal of Patrick Shea*, 121 Pa. St. 302. The presumption is against the validity of such a contract. *Pierce v. Pierce*, 71 N. Y. 154 ; 2 Pom. Eq. Jur., pars. 956, 957. There can be no such contract between the two except after the fullest and fairest explanation of every particular, resting in the breast of the one who seeks to establish the contract with the person so trusting him. Bishop's Equity, sec. 323. A contract entered into before, and in consideration of, marriage, which is fair and reasonable in itself, and free from fraud and imposition, will be enforced. *Jacobs v. Jacobs*, 42 Iowa, 600. A court of equity will interpose its jurisdiction to set aside instruments between persons occupying relations in which one party may naturally exercise an influence

over the conduct of another. A husband occupies such a relation to the wife. *Boyd v. De La Montague*, 73 N. Y. 498; *Darlington's Appeal*, 86 Pa. St. 512; *Kline v. Kline*, 57 Pa. St. 120. There was a deliberate premeditated abandonment of the appellant by her husband, and, under the law announced by this court, when he died, neither he nor his representatives were in a position to enforce the antenuptial contract. *York v. Ferner*, 59 Iowa, 487. The appellee stands in the same position as any stranger would, who had been made a legatee in the will of deceased, and is not in a position to demand that equity shall enforce this contract. *Merritt v. Scott*, 6 Georgia, 563; *Goodwin v. Goodwin*, 1 Ves. Sen. 228; *Byas v. Byas*, Ves. Sen. 164; *Price v. Jenkins*, L. R. 4 Ch. D. 483.

*Ezra Keeler* and *J. W. Jamison*, for appellee: All agreements and negotiations preliminary or contemporaneous to the written contract are merged therein, and the party signing a contract without having read it or taken precautions to ascertain its contents is bound thereby. *McCormick v. Molling*, 43 Iowa, 561; *McKinney v. Herrick*, 66 Iowa, 414; *Minneapolis & St. Louis Ry. Co. v. Cox*, 76 Iowa, 306; *Barnes v. Insurance Co.*, 75 Iowa, 11. An antenuptial contract, fully understood and fairly entered into without fraud, is valid, and it will be enforced. *Mahaffy v. Mahaffy*, 63 Iowa, 55; *Jacobs v. Jacobs*, 42 Iowa, 600; *Barth v. Lines*, 118 Ill. 374; 59 Am. Rep. 374. The words, "so long as she remains a widow," are not in restraint of marriage. *Hibbitts v. Jack*, 97 Ind. 570; 49 Am. Rep. 478. It could make no difference that the word "dower" was used in the contract. *Daugherty v. Daugherty*, 69 Iowa, 677; *Mock v. Watson*, 41 Iowa, 241. The fact that it was a marriage of convenience is a controlling circumstance upon the good faith and fairness of the antenuptial contract. *Mahaffy v. Mahaffy*, 63 Iowa, 55. The denial in defendant's answer is not sufficient to put in issue the genuineness of the signature. Code, sec. 2730; *Douglass v. Matheny*, 35 Iowa,

112 ; *Hall v. Ætna Manuf. Co.*, 30 Iowa, 215 ; *Loomis v. Metcalf*, 30 Iowa, 382. The authorities are uniform that the promise of marriage is a sufficient consideration to support the contract. *York v. Turner*, 59 Iowa, 487.

GIVEN, J.—I. The agreement in question provides, "that, in consideration of the promise of marriage by and between said parties, it is hereby mutually agreed by and between said parties, that during their marriage neither party shall, in any manner, be restricted in the control or disposition of their property, both real and personal, which they now have or may hereafter acquire ; and either may execute deeds of conveyance without the consent or signature of the other, the same as if unmarried. And said second party, in consideration of the aforesaid, hereby agrees to claim no right of dower or homestead in or to any property which shall belong to the estate of said party of the first part at the time of his decease, provided she shall survive him. And said first party, in consideration of the promises aforesaid, hereby agrees that, in case that said second party shall survive first party, said second party shall be allowed and paid, out of the estate of said first party, by his executor or heirs, the interest on the sum of three thousand dollars ( $3,000 ), which interest shall be paid annually from and after my decease, during the widowhood of said second party."

1. ANTENUPTIAL agreement: validity.

This agreement was executed and acknowledged July 3, 1877. The parties had resided in the same vicinity, and had been acquainted for about twenty-five years, a part of the time being near neighbors. At the time the agreement was signed, Mr. Peet was a widower, fifty-six years old, with a family of three children. The eldest, the plaintiff, was married and living in his own home ; the second, a son, then about of age, and the youngest, a daughter, aged thirteen, residing with their father. Mr. Peet then, and at his death, owned property worth fifty thousand dollars or more. The appellant was fifty-two years old. She had been divorced

from a former husband some thirty years previous; had resided for twenty-five years in the family of her brother, receiving her support from him and her earnings, and was without property or money. A few weeks before their marriage, Mr. Peet took appellant to his home, as company for his daughter, and soon thereafter they agreed to get married, and were married July 5, 1877. On July 3, Mr. Peet and his attorney, who had prepared the agreement, and who was a notary, called on appellant at her brother's home, and after the agreement was read in the hearing of both parties it was signed and acknowledged. Nothing was said at that time about Mr. Peet's property, appellant's interest therein, nor the effect of the agreement. Mrs. Peet testified that she did not understand that she was only to be provided for while she remained unmarried, nor about having the interest on three thousand dollars; that she signed the paper because of her confidence in Mr. Peet. It is contended on her behalf that she was inexperienced in business affairs; that Mr. Peet was an experienced business man, and that he procured appellant to sign the agreement without informing her as to the extent of his property, what her rights in it would be, or the effect of the agreement, and that she signed it without inquiry, because of their relation and the confidence she had in him that he would not ask anything of her but what was fair and just; that, in view of all the circumstances, the agreement is unfair and unconscionable, and should not be enforced.

Though both were advanced in years, yet their relation was one of confidence, and called for the utmost frankness and good faith on the part of James M. Peet. Appellant's long acquaintance with deceased and his family warrants the conclusion that she had a general knowledge as to the extent of his property. Her testimony discloses a degree of intelligence and knowledge of facts that satisfy us that she had a general knowledge of the rights that she, as his wife, would have in his property. Though the agreement was not

discussed at the time it was executed, it was evidently
the subject of a previous understanding. It is not
likely that Mr. Peet would have presented it for her
signature with nothing more said than was said at that
time, without a previous understanding that an agree-
ment was to be made   Mr. Myrick testifies that, a week
or two before the marriage, Mr. Peet told him about
the contract that was made, and that thereafter, on
the same day, appellant told him she was to have the
interest on fifteen hundred dollars. Myrick says the
amount was increased after that, and that Mrs. Peet
seemed satisfied with the amount. That Mrs. Peet
understood the agreement, is not only shown by these
previous conversations, and the fact that it was read in
her hearing, but by her statement, on the day of her
marriage, as a reason why her mother was not present,
"that she did not like it because she had signed away
her rights there with Mr. Peet." That she made this
statement is satisfactorily established by two witnesses,
notwithstanding Mrs. Higby, who is said to have been
present says she did not hear it, and Mrs. Peet denies
having made it.

It is argued that the agreement is so illiberal in its
provisions for the support of appellant as to evidence
that she acted under undue influence in executing it,
and that it is so unreasonable and unconscionable that
it should not be enforced. It cannot be said that the
provision for Mrs. Peet's support is liberal, and yet it
was such an agreement as the parties were at liberty to
make, and as the law will sustain when fairly made.
Appellee urges that it was not illiberal, because it does
not bar appellant of her rights in the personal assets of
the estate. As this question only arises incidentally,
and all the legatees are not parties to this action, we
do not pass upon it.

In view of all the circumstances, we do not think
the agreement is so unreasonable as to show undue
influence. Mrs. Peet had not contributed to the accu-
mulation of the estate, and was not likely to aid in its

enhancement. She was without a home, or means of
support of her own, except her earnings. Her ability
to earn a living would decrease with increasing years.
By this agreement, and marriage, she was assured of a
home, support and companionship with the man of her
choice, and the interest on three thousand dollars after
his death, so long as she remained his widow. Meager
as this provision is, yet it was reasonable that in
her circumstances she should be willing to accept it.
The circumstances did not call for special liberality on
the part of Mr. Peet. It was reasonable that he should
desire that no part of his estate should pass to stran-
gers, through his wife, to the prejudice of his children.
While a more liberal provision for appellant's support
would meet with ready approval, we cannot say, upon
the record, that Mrs. Peet was induced to execute the
agreement by undue influence, or in ignorance of its
general effect, nor that it is so unconscionable that it
should not be enforced.

II. It appears that during their married life the
appellant joined the deceased in executing conveyances

2. ——: aban-     of real estate, and it is argued that he
donment.     thereby repudiated and abandoned the con-
tract. While, under the agreement, he might have
executed conveyances without her joining, yet the mere
fact that she did join in such conveyances was not an
abandonment of the agreement.

III. It appears that the deceased was ill at his own
home for a number of weeks prior to his death, and that

3. ——: hus-     about ten days prior thereto he was, with
band's deser-     his consent, removed to the home of his
tion of the
wife.     son, the appellee, against the wishes of
Mrs. Peet. The reasons given for this removal are that
there was no one to care for him at his own home
except Mrs. Peet, with such assistance as might be
given by members of the family, and neighbors coming
in from their homes. It is also argued that Mrs. Peet's
nervous condition was such as to render her actions and
presence irritating and prejudicial to the sick man. It
is argued that by this removal the deceased deserted

his wife prior to his death, and, therefore, the contract should not be enforced against her.   It is very clear that there was no such desertion as would affect the force of this agreement.

IV.   It is contended that the plaintiff is not within the scope of this contract, and cannot enforce the same.

4. ——: rights of devisee to enforce.

The plaintiff is asking to quiet his title as against the rights of appellant in the estate of her husband.   The extent of those rights is dependent upon the validity of this agreement. Appellee is not a mere stranger to the contract.   We have no doubt of the right of appellee to be quieted in his title as against the claims of the appellant, provided the antenuptial agreement is binding upon her, and, deeming it binding, our conclusion is that the decree of the district court should be AFFIRMED.