**In re the MARRIAGE OF Carmen VAN REGENMORTER and Peter Van Regenmorter.**

**Upon the Petition of**

**Carmen Van Regenmorter, Petitioner–Appellee,**

**And Concerning**

**Peter Van Regenmorter, Respondent– Appellant.**

No. 97–1628.

Court of Appeals of Iowa.

Oct. 29, 1998.

Dale S. Honken and Harold D. Dawson of Zito, DeKoter, Thole, Dawson & Honken, P.L.C., Sibley, for appellant.

Francis A. Honrath of Honrath Law Office, Inwood, for appellee.

Considered by SACKETT, C.J., and HUITINK and VOGEL, JJ.

SACKETT, C.J.

Respondent-appellant Peter Van Regenmorter challenges the economic provisions of the dissolution decree dissolving his marriage to petitioner-appellee Carmen Van Regenmorter. Peter contends the provisions made by the district court are contrary to the parties' prenuptial agreement and not justified when viewed in the context of the short-term marriage. We affirm as modified.

Carmen and Peter were married in 1991. The marriage, the second for both Carmen and Peter, was childless. Prior to the marriage, the parties executed a prenuptial agreement detailing each would maintain his or her separate property. Additionally, the agreement provided should the marriage be dissolved they (1) agreed to make no claim to the other's separate property, (2) waived rights to alimony or spousal support, and (3) agreed to pay their own attorney fees. The agreement provided assets and liabilities acquired jointly or separately during the marriage should be divided equally unless the assets or liabilities are traceable to a corporation, Van Regenmorter Land & Livestock, Inc., in which case the assets should be Peter's and the liabilities should be his sole responsibility.

Attached to the agreement was Peter's financial statement showing he has assets of over $1,780,000 and debts of about $525,000, for a net worth of about $1,250,000. Carmen, at the time of marriage, was a nurse's aide in a nearby hospital. She had assets of less than $1000 and debts of about $4000.

Carmen's challenges to the fairness in the execution of the prenuptial agreement were dismissed by the district court and the agreement was upheld. Carmen has neither cross-appealed nor filed an appellate brief. Because Carmen did not file a brief, we confine our consideration to issues raised in Peter's brief. *Jefferson County v. Barton-Douglas Contractors, Inc.*, 282 N.W.2d 155, 157 (Iowa 1979). We, therefore, accept the district court's ruling the agreement should be upheld.

The district court, in dissolving the marriage, ordered Peter to pay Carmen $350 a month in spousal support to continue until any of the following events occur: the death of either party, Peter attaining the age of sixty-five years, the marriage of Carmen, or if Carmen cohabits with an unrelated male. The court further ordered Peter to pay Carmen $15,000 and found Carmen should receive the following property: real estate in Nicaragua, proceeds from the sale of a duplex in Sioux Falls, all of her jewelry, any furnishings and appliances now in her possession, her pension at Sioux Valley Hospital, and certain items of personal property, including a 1992 Buick Riviera. All other property was ordered to remain with Peter. Peter and Carmen were each ordered to pay

their own attorney fees and half the court costs.

Peter contends the spousal support was not justified when considered against the prenuptial agreement provision waiving support and the fact the parties lived together, as the district court found, for only twenty months of the five-year marriage.

■ Prior to 1980, a provision in a prenuptial agreement waiving alimony was void as against public policy. *See Vande Kop v. McGill,* 528 N.W.2d 609, 613 (Iowa 1995). In 1980, Iowa Code section 598.21 was amended by adding subsection 1(*l*)[1] and 3(i)[2] to provide courts can consider the provisions of a prenuptial agreement in considering whether to award alimony. On January 1, 1992, Iowa Code section 596.5(2)[3] became effective but did not affect agreements signed before that date. This agreement was signed December 13, 1991, and thus is not affected by section 596.5(2). The agreement was put in place during a period when provisions for eliminating spousal support were permitted. *See In re Marriage of Spiegel,* 553 N.W.2d 309, 319 (Iowa 1996).

■ The district court first recognized the waiver of spousal support provision in the agreement but found it not binding and considered it with the other factors of section 598.21(3) in making the spousal support award. The district court correctly followed the law in this regard. There is no mandate the alimony waiver be enforced; rather, because of the time frame when it was drafted, it is merely permissible it be waived. *See id.*

■ We, therefore, address Peter's contention the spousal support is not equitable when considered under the factors of section 598.21(3). He advances he is fifty-one and

diabetic, while Carmen is thirty-nine and basically healthy. He contends the marriage was of a short term and an even shorter term of cohabitation. He further contends the property award structured by the district court allocated all jointly-acquired assets to Carmen, contrary to their prenuptial agreement.

Peter argues he did not further his education during the marriage, but Carmen completed course work at Southeast Vo–Tech to become a nuclear medicine technician and phlebotomist and had training in sales by Mary Kay Cosmetics. He advances Carmen's income increased during the marriage from the approximately $11,000 she made at the time of the marriage to the $19,800 she makes while working for the same employer for seventeen years. Peter points out additionally Carmen is an interpreter for the United States District Court in South Dakota at $65 an hour.

The district court found Carmen's income to be at least $25,000 annually. The district court found Peter's income to be $50,747, including a $24,000 annual salary and additional income from his corporation. Peter disputes he enjoys income from his corporation. He pays his first wife alimony of $6600 annually.

■ We consider the award of alimony in conjunction with the property award. It is appropriate to consider the property distribution made in the decree in assessing alimony. *Id.*

Peter takes issue with two provisions of the property award. He first contends the provision he pay Carmen $15,000 is inequitable and contrary to the prenuptial agreement. Peter and Carmen went to work in

---

1. Upon every judgment of annulment, dissolution or separate maintenance the court shall divide the property of the parties and transfer the title of the property accordingly.... The court shall divide all property, except inherited property or gifts received by one party, equitable between the parties after considering all of the following:
   ....
   *l.* The provisions of an antenuptial agreement.
   Iowa Code § 598.21(1)(*l*).

2. 3. Upon every judgment of annulment, dissolution or separate maintenance, the court may

grant an order requiring support payments to either party for a limited or indefinite length of time after considering all of the following:
   ....
   i. The provisions of an antenuptial agreement.
   Iowa Code § 598.21(3)(i).

3. 2. the right of a spouse or child to support shall not be adversely affected a the premarital agreement.
   Iowa Code § 596.5(2).

Paraguay—he as an agricultural consultant through a contract with his corporation, Van Regenmorter Land & Livestock, Inc., and she as an interpreter. The district court found Carmen was underpaid for that work, specifically finding Carmen and the corporation were together paid $51,778 and Carmen's half was $25,889, but she only received $8250 leaving her short $17,639. The $15,000 was to compensate her for this shortage.

Peter contends Van Regenmorter Land & Livestock, Inc., contracted with G. William Miller & Co. to provide agricultural consulting services through him as the corporation's employee for an agreed fee of $1600 per week. He advances he was in Paraguay twenty-seven weeks and Van Regenmorter Land & Livestock, Inc. was paid $43,528.57 for his efforts. Peter further contends Carmen was in Paraguay with Peter for only eleven of his twenty-seven weeks in the country and, while there, she was paid $750 per week by G. William Miller & Co. to serve as an interpreter and the money earned by her was deposited directly into her account at a credit union.

Peter contends the allocation of the $15,000 to Carmen was contrary to the following provision of their prenuptial agreement that provides as follows:

It is agreed that any or all inherited property acquired by either of the parties after their marriage, together with appreciation of their existing property, or substitutions and exchanges of their existing property for other property, shall remain his or her individual property, and is covered by this agreement. It is the intent of the parties that they may trace their ownership to the property on hand at the time of the marriage. In a similar manner, income, appreciation, and increases or decreases in the value of those separate inherited or other separate assets shall remain the property of the original owner.

The trial court found Peter was in Paraguay longer than Carmen and the exhibits show the majority of the money was paid to his corporation. However, the record supports the trial court's finding it was a joint effort. We find no inequity in the $15,000 award.

■ Peter next contends the district court, in allocating assets, again disregarded the prenuptial agreement and specifically disregarded the following provision:

It is agreed that all property, assets, and liabilities acquired by the parties jointly after marriage, together with all enhancements, appreciation and increases in value thereof, shall be considered joint assets and joint liabilities to be divided equally upon dissolution or according to such deeds, wills, or other instruments as the parties execute during their respective lifetimes, unless those assets or liabilities are directly traceable to the separate property of Van Regenmorter Land and Livestock, in which case such assets or liabilities remain the separate property of Peter Van Regenmorter.

Peter advances the property award, combined with the $15,000 payment, resulted in Carmen receiving over $50,000 in property plus pension accumulations which represent all accumulations agreed to be divided by the prenuptial agreement.

■ We review de novo, Iowa R.App. P. 4, giving deference to the district court's findings as to credibility, but we are not bound by them. *In re Marriage of Kurtt*, 561 N.W.2d 385, 387 (Iowa App.1997). We recognize prenuptial agreements are to be construed liberally to carry out the intent of the parties. *In re Marriage of Gonzalez*, 561 N.W.2d 94, 96 (Iowa App.1997); *In re Marriage of Christensen*, 543 N.W.2d 915, 918 (Iowa App.1995); *In re Marriage of Van Brocklin*, 468 N.W.2d 40, 45 (Iowa App.1991). They are to be treated and construed like any other ordinary contract. *Van Brocklin*, 468 N.W.2d at 45; *Christians v. Christians*, 241 Iowa 1017, 1021, 44 N.W.2d 431, 433 (1950). We note, too, generally assets acquired during a marriage are nearly equally divided. *In re Marriage of Byall*, 353 N.W.2d 103, 106 (Iowa App.1984).

We do not disturb the district court's property division. However, an award of alimony is not justified. Carmen has received an ample property award under the circumstances here. The marriage was short; the cohabitation period was shorter. Carmen

leaves the marriage with enhanced credentials due to education she received. She made no sacrifice to her career during the marriage. She is younger than Peter and in better health. She leaves the marriage with over a $50,000 increase in net worth. While Peter's income may be higher, there is little evidence to show Carmen contributed to his business success. Rather, his income is the result of assets and a business he brought to the marriage. There is no rule requiring Peter to share his wealth simply because he had more to share than Carmen. *See Spiegel,* 553 N.W.2d at 316; *Peet v. Peet,* 81 Iowa 172, 178, 46 N.W. 1051, 1052 (1890). All factors, when considered with the waiver of alimony in the premarital agreement, call for the elimination of the alimony award. *See Gonzalez,* 561 N.W.2d at 96. We modify to eliminate the alimony award.

We award no attorney fees. Costs on appeal are taxed one-half to each party.

**AFFIRMED AS MODIFIED.**