# IN THE COURT OF APPEALS OF IOWA

No. 15-0607
Filed April 27, 2016

**TERRY MICHAEL HUEGLI,**
Plaintiff-Appellant,

**vs.**

**JANEEN NAN HUEGLI,**
Defendant-Appellee.

_____

Appeal from the Iowa District Court for Black Hawk County, George L. Stigler, Judge.

Terry Huegli appeals the spousal support provision of a dissolution decree. **AFFIRMED AS MODIFIED.**

D. Raymond Walton of Beecher Law Offices, Waterloo, for appellant.

Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, P.L.C., Cedar Falls, for appellee.

Heard by Danilson, C.J., and Vaitheswaran and Tabor, JJ.

**VAITHESWARAN, Judge.**

Terry Huegli appeals the spousal support provision of a dissolution decree.

## I.    Background Facts and Proceedings

Terry and Janeen Huegli married in 2007.  At the time, both were sixty-two years old.  Prior to their marriage, the parties signed a prenuptial agreement which included a provision acknowledging spousal support "may not be adversely affected by a premarital agreement" but noting the parties' desire to forego this type of support.[1]

The dissolution decree was entered on February 6, 2015.  "[E]ffective February 1, 2015," the court ordered Terry to pay Janeen "permanent alimony . . . of $300 per month until such time as . . . she dies or . . . remarries."  Terry filed a motion for enlarged findings and conclusions pursuant to Iowa Rule of Civil Procedure 1.904(2).  The district court denied the motion and this appeal followed.

## II.    Alimony

"Alimony is a stipend to a spouse in lieu of the other spouse's legal obligation for support."  *In re Marriage of Probasco*, 676 N.W.2d 179, 184 (Iowa 2004) (citation omitted).  Although our courts have identified three types of alimony, a court need not specify which type is being awarded.  *See In re*

---

[1] The provision stated in full:

> The parties acknowledge that the Iowa Uniform Premarital Agreement Act provides that the right of a spouse or child to support may not be adversely affected by a premarital agreement; nevertheless, in the event of separation or dissolution of marriage, all parties hereto desire that neither be required to pay separate maintenance, alimony, or spousal support, to one another.

*Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008) ("[T]here is nothing in our case law that requires us . . . to award only one type of support."); *In re Marriage of Mata*, No. 08-1682, 2009 WL 2169145, at *3 (Iowa Ct. App. July 22, 2009) (finding no error in trial court's failure to specify type of alimony awarded). Our review is de novo, but "we accord the trial court considerable latitude." *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015).

### A. Prenuptial Waiver

Terry contends the district court "erred in not enforcing the prenuptial agreement that provided neither party be awarded alimony in the event that their marriage would dissolve." He concedes this provision violates Iowa Code section 596.5(2) (2015), which states, "The right of a spouse or child to support shall not be adversely affected by a premarital agreement." *See In re Marriage of Shanks*, 758 N.W.2d 506, 513 (Iowa 2008) ("The IUPAA . . . prohibits premarital agreements from adversely affecting spousal support. . . . [T]he district court correctly concluded the purported alimony waiver in this premarital agreement is invalid and unenforceable."). But he suggests another statute, Iowa Code section 598.21A(1)(i), authorizes consideration of the premarital agreement in the alimony analysis.

This court traced the evolution of premarital alimony waiver provisions in *In re Marriage of Van Regenmorter*, 587 N.W.2d 493, 495 (Iowa Ct. App. 1998). The court noted that, prior to 1980, the provisions were void as against public policy. *See Van Regenmorter*, 587 N.W.2d at 495. In 1980, the legislature authorized consideration of prenuptial agreements in the alimony analysis. *See id.*; *see also* Iowa Code § 598.21A(1)(i) (formerly Iowa Code § 598.21(3)(i)).

Then, effective January 1, 1992, the legislature enacted Iowa Code section 596.5(2) disallowing alimony waiver provisions in premarital agreements executed after that date. However, the legislature did not rescind section 598.21A(1)(i). And, the Iowa Supreme Court recently reaffirmed the primacy of the factors set forth in section 598.21A(1) without specifically addressing subsection (i). *See In re Marriage of Mauer*, 874 N.W.2d 103, 109 (Iowa 2016) ("[A]ny court, including our appellate courts, must apply the section 598.21A(1) factors in making spousal support determinations.").

The question, then, is how to reconcile the endorsement of premarital agreements in section 598.21A(1)(i) with the disavowal of alimony waivers in section 596.5. In our view, the specific language of section 596.5 precludes a reading of section 598.21A(1)(i) that would allow consideration of alimony waiver provisions in prenuptial agreements. *See Oyens Feed & Supply, Inc. v. Primebank*, 808 N.W.2d 186, 194 (Iowa 2011) ("To the extent there is a conflict or ambiguity between specific and general statutes, the provisions of specific statutes control." (citation omitted)). In other words, section 598.21A(1)(i) only authorizes consideration of the enforceable provisions of premarital agreements such as provisions concerning the division of property. *See Mauer*, 874 N.W.2d at 110 (considering property settlement in determining spousal support); *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 487 (Iowa 2012) (noting a party "received a substantial property award from the court because of the premarital agreement" and stating "in calculating spousal support, it is proper to look at the assets each party received"). The prenuptial alimony waiver provision in this

agreement is unenforceable. We will not consider the provision in the alimony analysis.

### B. Other Pertinent Statutory Factors

Terry contends a spousal support award was unwarranted because "[t]his was not a marriage of long duration." *See* Iowa Code § 598.21A(1)(a). True, the marriage lasted less than eight years. But the parties were not young when they married and were seventy years old when they divorced. *See id.* § 598.21A(1)(b).

In addition, Janeen testified her health was "[n]ot that great." *See id.* Specifically, she had poor circulation in her legs, which required the insertion of stints, and also had longstanding chronic obstructive pulmonary disease. *See In re Marriage of Wahlert*, No. 07-2061, 2009 WL 1676897, at *3 (Iowa Ct. App. June 17, 2009) (affirming alimony award based in part on wife's "diabetes, high blood pressure, and . . . history of depression"); *In re Marriage of Swalley*, No. 03-0175, 2004 WL 241485, at *1, *3 (Iowa Ct. App. Feb. 11, 2004) (affirming alimony award based in part on wife's poor health, including rheumatoid arthritis and ulcerative colitis). Terry, in contrast, presented scant if any evidence of health issues.

Janeen's age and health affected her earning capacity. *See* Iowa Code § 598.21A(1)(e). Before marrying Terry, she had worked for eighteen years as a full-time school custodian. Janeen testified Terry "wanted [her] to retire so [they] would be able to do things" like travel together. She referred to this decision as "our idea" but said it was "something [Terry] wanted [her] to do." She retired around the time of the marriage. At the time of the separation, she was receiving

Social Security benefits of approximately $776 per month and Iowa Public Employee Retirement System benefits of $751 per month. She continued to work part-time as a custodian, earning net monthly income of approximately $170. She was simply not in a position to return to full-time work as a custodian or retrain for other work. In contrast, Terry retired in 1998 and received monthly income of approximately $1382 from his pension and close to $1450 from Social Security. He also had several income-generating investments.

Terry also entered the marriage with significantly more property than Janeen. *See id.* § 598.21A(1)(c) (authorizing consideration of property distribution in alimony analysis). Under the prenuptial agreement, each party agreed to retain his or her own assets. Terry retained approximately $280,000 in assets, including a home valued at $160,000.

By contrast, Janeen received assets of between $36,600 and $40,600 depending on whose figures were used.[2] After the marriage, Janeen sold the trailer where she had been living, receiving no proceeds from the sale. As a result, she had a monthly rent payment of $650 following her separation from Terry. *See In re Marriage of Salter*, No. 01-1382, 2003 WL 1523334, at *2 (Iowa Ct. App. Mar. 26, 2003) (affirming alimony award where wife "gave up her home and job when she married [husband]"). After the divorce, she also had to obtain her own health insurance. Finally, her expenses, which were far from extravagant, exceeded her limited income by approximately $332. *See Mata*,

---

[2] Terry contends the district court incorrectly considered Janeen's $13,000 annuity in the alimony analysis. In his view, this asset militated against a spousal support award. The figures we use correctly allocate the annuity to Janeen. Because the annuity does not alter our conclusion that Janeen was entitled to spousal support, we need not address Terry's claim that the district court erred in denying his rule 1.904(2) motion.

2009 WL 2169145, at *3 ("[Wife] testified she was not able to pay her bills and was $400 short in her monthly obligations. The record indicates monthly obligations do not appear to cover anything beyond [wife's] bare necessities.").

In light of these factors, we conclude the district court acted equitably in awarding spousal support of $300 per month. *See In re Marriage of O'Brien*, No. 9-665, 2000 WL 328065, at *2 (Iowa Ct. App. Mar. 29, 2000) (affirming traditional alimony after a four-year marriage where parties were in their late fifties at the time of dissolution and husband was "a person of considerable financial means" and "his income [was] sufficient to pay alimony without compromising his accustomed lifestyle" while wife's "health remain[ed] an obstacle to self-sufficiency").

The duration of the award is less equitable. As Terry noted, this was a relatively short marriage and both spouses went into it with their eyes open. Terry was fully retired when he married Janeen and could reasonably expect to enjoy the fruits of his labor. And, although Janeen reduced her work hours following the marriage, the record is unclear as to how much her retirement benefits would have increased had she continued to work full time or how long she would have continued to work full time. Under these circumstances, we conclude a lifetime award of alimony was not warranted. We modify the award to last for sixty months or until either party dies or Janeen remarries.

C.    *Retroactivity*

As noted, the dissolution decree was filed on February 6, 2015. Terry contends the district court "erred in making the alimony retroactive to February 1, 2015." Janeen counters that she requested temporary support and the additional

five days of alimony could be construed as temporary support. However, she concedes no temporary support order was entered and cites no authority for the five days of support absent a temporary order.

Although the five days of additional support Terry paid would make little difference to the support obligation or his bottom line, we believe a modification is required in the absence of authority for the award. We modify the decree to provide that the spousal support award shall begin on February 6, 2015.

### III. Attorney Fees

Janeen requests $1500 in appellate attorney fees because she "was required to defend the trial court's ruling in this appeal, and because of her need and Terry's ability to pay." Janeen did not completely prevail. Accordingly, we decline her request.

### IV. Disposition

We modify the $300 per month spousal support award to begin on February 6, 2015, and end in sixty months or earlier if either party dies or Janeen remarries. Costs are assessed one-half to each party.

**AFFIRMED AS MODIFIED.**