**IN THE COURT OF APPEALS OF IOWA**

No. 18-0362
Filed March 20, 2019

**IN RE THE MARRIAGE OF GALYN JOHN MOELLER
AND TAMRA LEIGH MOELLER**

**Upon the Petition of
GALYN JOHN MOELLER,**
        Petitioner-Appellee,

**And Concerning
TAMRA LEIGH MOELLER,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Crawford County, Steven J.

Andreasen, Judge.

        A wife appeals the economic provisions in the parties' dissolution decree.

**AFFIRMED AS MODIFIED.**

        Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, PC,

Carroll, for appellant.

        Maura Sailer of Reimer, Lohman, Reitz, Sailer & Ullrich, Denison, for

appellee.

        Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Tamra Moeller appeals the economic provisions in the parties' dissolution decree. We find the parties' premarital agreement is not enforceable because Galyn Moeller did not provide accurate information on his financial disclosure form. The district court made alternative findings concerning the division of the parties' property if the premarital agreement was found to be unenforceable, and we find this division is equitable. We also affirm the court's decision not to award spousal support to Tamra and to order Galyn to pay part of her trial attorney fees. We do not award any appellate attorney fees. We affirm the decision of the district court, although we modify it to find the parties' premarital agreement is not enforceable.

## I.    Background Facts & Proceedings

Galyn and Tamra met when they were both employed by The Maschhoffs, a pork production company. In March 2012, Galyn purchased a hog barn. Tamra moved to Denison to live with Galyn in August 2012. Galyn purchased a second hog barn in December 2012. He operates the hog business under the name Moeller Farms, LLC. In addition, Galyn has a one-half interest in M & W Freedom Farms, LLC, which leases a property to raise hogs. Tamra periodically helped Galyn load hogs and perform other chores both before and after the marriage.

Galyn and Tamra got engaged in February 2013 and set a wedding date for January 24, 2014. At the time of the marriage, Galyn was fifty-one years old and Tamra was twenty-six. It was Galyn's third marriage and Tamra's first. Galyn expressed an interest in having a premarital agreement. On December 11, 2013, Galyn and Tamra met with Galyn's attorney, Reed Reitz, to provide him with

financial information. They went back to Reitz's office on January 13, 2014, to sign the premarital agreement.

The premarital agreement provides the parties would not have an interest in the property the other spouse brought to the marriage, including increases in value. Also, "Galyn and [Tamra] shall each pay one-half of the living expenses of the household." The agreement stated upon dissolution of marriage, "neither party shall seek support, alimony, or attorney fees from the other." An attached financial statement showed Galyn had assets worth $1,445,000 and debts of $1,220,000, giving him net worth of $225,000. The statement showed he had income of $276,000 per year from Moeller Hogs and $60,000 from The Maschhoffs. The statement showed Tamra had total assets of $13,000 and debts of $14,000, for a net worth of -$1000. She had income of $41,000 per year.

After the parties married, they opened a joint bank account and each would deposit their income from The Maschhoffs into the account, which was used to pay their living expenses. About two months after the premarital agreement was signed, on March 13, 2014, Galyn submitted a financial statement to a bank showing his net worth was $531,598.

On September 1, 2016, Galyn quit his job at The Maschhoffs and began working full time in his hog production business. After this, he no longer regularly put money into the parties' joint checking account but only put money into the account when necessary. Tamra's wages were used to pay for the family's day-to-day expenses and Galyn's income was used to pay down the debt on his hog business. During the marriage, the equity in the farms increased by $449,295.

On January 18, 2017, Galyn filed a petition for dissolution of marriage. The parties separated in February 2017. In August 2017, Tamra quit her job at The Maschhoffs and moved to Des Moines. She is now employed as an animal control officer with the Animal Rescue League, and earns $30,000 per year.

During the dissolution trial, Tamra claimed the premarital agreement was not enforceable. Galyn testified he had not read the premarital agreement or the attached financial statement. When questioned about his net worth on the financial statement, he stated, "As a matter of fact, that two twenty-five, . . . that is way low." He also stated he borrowed $100,000 from his father at the time he purchased the second hog barn in December 2012 and this debt was not included in the financial statement attached to the premarital agreement, nor had he told Tamra about it.

The district court concluded the premarital agreement was valid and enforceable. The court went on to find, however, even if the premarital agreement was not enforceable, "the property and debts of the parties would be divided the same." The court noted this was a short-term marriage and each party should be awarded the assets they brought to the marriage. The court found Tamra did not contribute to the increased equity in Galyn's farm assets and did not award her a portion of the increase in value. The court awarded Galyn net assets of $553,779 and Tamra net assets of $42,898. The court awarded Tamra a cash property settlement of $30,000, which reduced the award to Galyn to $523,779 and increased the award to Tamra to $72,898.

The court did not award Tamra spousal support, finding she had the ability to support herself. The court determined Galyn should pay $3000 of Tamra's trial

attorney fees because Galyn made a late disclosure of certain financial information.

Tamra filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), which was denied by the district court. Tamra now appeals.

## II.    Standard of Review

Our review in dissolution cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). "We examine the entire record and determine anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). We give weight to the factual findings of the district court but are not bound by them. *In re Marriage of Geil*, 509 N.W.2d 738, 740 (Iowa 1993).

## III.    Property Division

**A.**    Tamra claims the district court improperly found the premarital agreement was enforceable. She states the premarital agreement was involuntary and unconscionable because Galyn did not make a full or accurate financial disclosure. As the party challenging the premarital agreement, Tamra has the burden to show it is unenforceable. *See In re Marriage of Shanks*, 758 N.W.2d 506, 519 (Iowa 2008).

Premarital agreements are subject to the Iowa Uniform Premarital Agreements Act, Iowa Code chapter 596 (2017). *In re Marriage of Erpelding*, 917 N.W.2d 235, 238 (Iowa 2018). Iowa Code section 596.8(1) provides:

> A premarital agreement is not enforceable if the person against whom enforcement is sought proves any of the following:
> a. The person did not execute the agreement voluntarily.
> b. The agreement was unconscionable when it was executed.

      c. Before the execution of the agreement the person was not provided a fair and reasonable disclosure of the property or financial obligations of the other spouse; and the person did not have, or reasonably could not have had, an adequate knowledge of the property or financial obligations of the other spouse.

Section 596.8(1)(c) "requires only 'fair and reasonable' disclosure, or that the party could have had 'adequate knowledge' of the other party's property and financial obligations." *Shanks*, 758 N.W.2d at 519.

During the dissolution trial, Galyn testified he had not looked over his financial disclosure form prior to when the parties signed the agreement and it did not accurately show his financial condition. The form showed Galyn had a net worth of $225,000. He testified this was "way low," and the bank statement made two months after the premarital agreement was signed, showing he had a net worth of $531,598, was more accurate. In addition, Galyn stated he owed $100,000 to his father which was not shown on either statement.

We conclude the premarital agreement is not enforceable because Galyn did not provide "a fair and reasonable disclosure of the property or financial obligations" he had. *See* Iowa Code § 596.8(1)(c); *see also In re Marriage of Sell*, 451 N.W.2d 28, 30 (Iowa Ct. App. 1989) ("Because of the relation of trust and confidence between the parties, the law requires the full and frank disclosure of all matters bearing upon an antenuptial agreement."). Instead, Galyn provided Tamra with a statement showing his net worth was less than one-half as much as the actual amount. The financial statement attached to the premarital agreement affirmatively misled Tamra concerning the extent of Galyn's net worth. *See In re Marriage of Cerven*, 335 N.W.2d 143, 145 (Iowa 1983) (finding the husband conceded a premarital agreement "was invalid because of lack of disclosure").

**B.** The district court determined the property division would be the same whether or not the premarital agreement was enforceable. We turn then to the issue of whether the property division was equitable. "Section 598.21(1) requires 'all property, except inherited property or gifts received by one party,' to be equitably divided between the parties." *Fennelly*, 737 N.W.2d at 102. Factors the court considers include the length of the marriage, contributions of each party to the marriage, the age and health of the parties, each party's earning capacity, property brought to the marriage, and any other factor the court may determine to be relevant to any given case. *Id.* "Although an equal division is not required, it is generally recognized that equality is often most equitable." *Id.* (citation omitted).

We find the district court's valuation of the parties' property was within the range of the evidence, and make no adjustments to property values. *See In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013) ("We refuse to disturb the district court's valuation of the assets included in the marital estate because it is within the range of permissible evidence."). In addition, based on the shortness of the marriage, we find the court equitably set aside to the parties the property each brought to the marriage. *See In re Marriage of Hansen*, 886 N.W.2d 868, 872 (Iowa Ct. App. 2016) ("We have stated that the claim of a party to the premarital property owned by the other spouse in a short-term marriage is 'minimal at best.'" (citation omitted)). Furthermore, we agree with the district court's conclusion the amounts due to Galyn under his hog finishing contracts should be considered income when he receives payment, not an asset for purposes of property division. *See In re Marriage of Schriner*, 695 N.W.2d 493, 498 (Iowa

2005) ("[F]uture earnings of a spouse from employment are not considered to be property at the time of the divorce.").

We note it may be equitable to "divide the appreciation of the parties' premarital assets." *See Fennelly*, 737 N.W.2d at 104. Although the district court found Tamra's assistance with the farming operation was minimal, the court determined she should receive a cash property settlement of $30,000 as "an equitable reflection of her direct contribution to Moeller Hogs and the increased equity in Galyn's farming operations, as well as part of an equitable division of the property acquired during the marriage." Considering the cash property settlement, Tamra receives net assets of $72,898 and Galyn receives $523,779. We find this division is equitable under the circumstances of the case, and we affirm the property division.

## IV.    Spousal Support

Tamra claims she should have been awarded spousal support. She asked for support of $1000 per month for ten years. She points out Galyn received a substantially greater amount of property than she did, and he received all of the income-producing assets. Tamra states she earns $30,000 per year and is unable to live at a standard of living comparable to that enjoyed during the marriage.

"Property division and alimony should be considered together in evaluating their individual sufficiency." *In re Marriage of Trickey*, 589 N.W.2d 753, 756 (Iowa Ct. App. 1998). Spousal support is not an absolute right. *In re Marriage of Fleener*, 247 N.W.2d 219, 220 (Iowa 1976). Whether spousal support is proper depends on the facts and circumstances of each case. *In re Marriage of Brown*, 487 N.W.2d 331, 334 (Iowa 1992). When determining whether spousal support is appropriate

we consider the relevant factors found in Iowa Code section 598.21A. *In re Marriage of Hansen*, 733 N.W.2d 683, 704 (Iowa 2007).

The district court did not award Tamra any spousal support. The court found Galyn might have a greater earning capacity than Tamra, but she was younger than him and was in good health. The court found the physical demands of farming would likely limit the number of years Galyn could continue his self-employed farming operation. The court also noted Tamra did not lose her employment at The Maschhoffs. The court concluded, "The facts and circumstances of this marriage simply do not warrant or justify an award of traditional, reimbursement, or rehabilitative spousal support." We agree with the court's conclusions. Tamra voluntarily left her job where she was currently earning $42,000 per year to move to Des Moines, where she earns $30,000. We affirm the district court's decisions finding spousal support should not be awarded in this case.

### V.     Attorney Fees

**A.**     Tamra requested trial attorney fees of $11,968. The district court determined Galyn should pay $3000 of her trial attorney fees due to his "late disclosure of financial information." Tamra claims the district court abused its discretion by not ordering Galyn to pay all of her trial attorney fees.

We review a district court's decision granting trial attorney fees in a dissolution action for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Whether attorney fees should be awarded depends on the respective abilities of the parties to pay." *Id.* (citation omitted). We conclude the

district court did not abuse its discretion in denying Tamra's request for a greater award of trial attorney fees.

**B.** Tamra and Galyn seek attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *Id.* (citation omitted). In determining whether to award appellate attorney fees, we consider, "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted). We conclude each party should pay their own appellate attorney fees.

We affirm the decision of the district court, although we modify to find the parties' premarital agreement is not enforceable.

**AFFIRMED AS MODIFIED.**